47919. ANDREWS v. COMMERCIAL CREDIT CORPORATION.

CLARK, Judge. Commercial Credit Corp. sued Andrews for a stated balance owing on a retail instalment automobile contract. Andrews filed an answer admitting execution of that contract but denying default and that any balance was due thereunder. In addition, Andrews pleaded a set-off in these words: "Further answering plaintiff's petition defendant shows that he and the plaintiff had a reserve contract before, during and after the transaction sued upon and that plaintiff has never given defendant an accounting therefor and that plaintiff is indebted to defendant."

Commercial Credit established the exact amount claimed by its

business records and by cross examination of Andrews.

Andrews then undertook to submit evidence as to his accounting set-off. He testified he had been in the used car business from 1967 through December 5, 1970, when he was padlocked by the Federal Government. At that time his business records were in his establishment but they disappeared and had not been seen since then. The record shows he had through discovery interrogatories sought to obtain from Commercial Credit files documentary data to confirm his contentions but Commercial Credit denied that there had been any reserve contracts with Andrews and accordingly denied that any payments or credits had been made to him. (R. 22, 23, 26). Andrews testified he had in fact signed a reserve contract with Commercial Credit in 1967 or the first of 1968 under which a certain percentage of each deal was supposed to be placed in a special reserve and another portion in the regular account. "We were supposed to get a break-down copy of how much dealer reserve we had in the regular account, how much we had in the special reserve, which they held. It was supposed to pay the regular reserve at the end of each month, but from 1967 to 1970 I never drew a reserve check." (T. 18). Although he was supposed to get a copy of the written reserve contract he stated none had ever been received.

In support of his contention that there was in fact a reserve contract he sought to introduce a written document concerning an automobile sold by him on March 18, 1968, which he said had accidentally been found in another file. He described it as being "This is a receipt of reserve I got on this deal with Commercial Credit, twenty-nine dollars and fifty-one cents in regular account, twenty-nine dollars and fifty-two cents in a special account." (T. 19). Upon objection the trial judge refused to admit this into evidence. No tender of proof was made and there is no enumeration of error concerning its exclusion. He further testified that at the same period of time his financing arrangements were also with the Georgia Railroad Bank but in response to the question "You can't tell us, or can you tell us just what amount of money Commercial Credit is indebted to you under these reserve contracts?" He answered "No, sir, I cannot, because I have not received from them the correct amount." (T. 24). He further testified that in 1969 the then manager "did say that my reserve had been wiped out, but what he meant by 'wiped out' I don't know." (T. 24, 25).

On cross examination the following dialogue ensued: "Q. Mr.

Andrews, you just testified that you cannot testify as to any amount of reserve with Commercial Credit, is that right? A. No specific amount, no." (T. 31).

In his own behalf, Andrews presented a former Commercial Credit employee who replied to the query "While you were manager of Commercial Credit did you ever enter into a reserve contract with Mr. Andrews?" that "I was in the process of trying to get Mr. Andrews set up as a dealer. I can't remember whether he actually signed the reserve contracts or not. I don't know, but we got the financial statement and what-have-you and actually tried to get him approved through our credit department in Baltimore, and I don't recall what stipulations or what reasons that everything wasn't worked out. I don't recall all of that." (T. 37).

With reference to the purported $29.51 the former manager answered that "Well, it would still belong to Commercial actually until the agreements were confirmed, and he was approved as a dealer. He would have no claim to the money if he in any way had any outstanding obligations due Commercial Credit." (T. 39). On cross examination the former manager finally acknowledged specifically that the proposed agreement between Andrews and Commercial Credit was not consummated (T. 42) which he explained was due to the Baltimore office declining to approve the proposed transaction. (T. 43).

After both sides had closed Commercial Credit moved for directed verdict which was granted.

A motion for a new trial was filed on the sole ground that "the court erred in directing a verdict for the plaintiff." After this was denied the instant appeal was taken with the single enumeration of error being that "The court erred in directing a verdict for plaintiff and not allowing the case to go to the jury for determination."

1. "If there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed." Code Ann. § 81A-150 (a). Plaintiff proved the exact amount due it on the single retail instalment contract on which suit was brought. Andrews totally failed to establish by any competent evidence that there was some amount owing to him as a set-off. The trial court was correct.

2. When a party makes a claim for a monetary sum, even though it be in the nature of a set-off, it is incumbent upon him to present evidence in such a way that the jury may calculate the amount

without guesswork. *Lansdale Clothes, Inc. v. Wright,* 217 Ga. 817, 819 (125 SE2d 502); *Williams & Templeton v. Brewer,* 93 Ga. App. 603 (1) (92 SE2d 586) and cits. See also *Thomas v. Campbell,* 126 Ga. App. 675 (3) (191 SE2d 619).

3. With Andrews being without his business records and with his discovery efforts to establish his contentions from Commercial Credit's files having come to naught, he tried to create a jury issue as to $29.51 and $29.52 through the single purported receipt. But the trial court sustained an objection to the introduction of this memorandum and no offer of proof was made. Thus this document did not become a part of the record. Nor did appellant in his new trial motion aver this evidentiary ruling to have been error. "No matter how erroneous the ruling might have been (and we express no opinion on this question), a litigant cannot submit to a ruling, acquiesce in the ruling, and still complain of same. He is required to stand his ground and fight in order to successfully enumerate as error an erroneous ruling by the trial judge. Acquiescence completely deprives him of the right to complain further; he has agreed that the trial court's ruling was correct by submitting to it." *Upshaw v. Cooper,* 127 Ga. App. 690 (1) (194 SE2d 618).

4. Where counsel fails to make a showing as to what he expected the witness to answer we cannot consider the excluded evidence. *Berger v. Plantation Pipeline Co.,* 121 Ga. App. 362 (2) (173 SE2d 741). "A basic rule of appellate procedure is that no appellate court can rule on the exclusion of evidence unless it is aware of what was excluded. If error is based on the refusal to permit a witness to answer a question, the judge and the appellate court must be informed as to what the answer would have been." 11 Encyc. Ga. Law, p. 261. We therefore cannot consider the omitted evidence that is not in the transcript.

5. There are some cases, of which *Proctor & Gamble Co. v. Blakely Oil &c. Co.,* 128 Ga. 606 (57 SE 879) is illustrative dealing with the manner in which rejected evidence is treated upon an appeal from a directed verdict. Those cases which are cited in the dissenting opinion hold that where evidence which is essential to make out a case is excluded by the court, the losing party will not thereby be prevented from excepting to the direction of a verdict. In each of those cases the necessary tender of proof was made, the record contained the rejected evidence, and the point was not only preserved but specified as error. In those cases the appellate tribunal ruled error to have occurred in rejecting the evidence so

that if admitted as should have been done that a jury issue would have been created. This case therefore does not come within that category.

*Judgment affirmed. Bell, C. J., Hall, P. J., Eberhardt, P. J., Pannell, Deen, Quillian and Stolz, JJ., concur. Evans, J., dissents.*

SUBMITTED FEBRUARY 8, 1973 — DECIDED JUNE 26, 1973.

*Archie L. Gleason,* for appellant.

*Jay M. Sawilowsky,* for appellee.

EVANS, Judge, dissenting. Plaintiff sued defendant for an amount alleged to be due under a contract; defendant answered and alleged that the parties "had a reserve contract before, during and after the transaction sued upon and that plaintiff has never given an accounting therefor and that plaintiff is indebted to defendant." He prayed that plaintiff be required to "give unto defendant a full accounting of all sums owed to him under said reserve contract," and demanded judgment in his favor.

After discovery, the case was tried before the court and a jury, and at the conclusion of the evidence, the trial judge directed a verdict in favor of the plaintiff for the amount claimed in the complaint. Defendant filed a motion for new trial, which was overruled, and he now appeals to this court.

1. The majority opinion affirms the trial judge in its direction of a verdict. I disagree. The direction of a verdict is proper only when there is no conflict in the evidence as to any material issue, and when the evidence introduced, with all reasonable deductions, demands a verdict. Code Ann. § 81A-150 (a) (§ 50, CPA; Ga. L. 1966, pp. 609, 656; 1967, pp. 226, 237, 246, 248); *State Farm Mut. Auto. Ins. Co. v. Snyder,* 125 Ga. App. 352 (187 SE2d 878); *Isom v. Schettino,* 129 Ga. App. 73.

2. In considering a motion for directed verdict, all of the evidence and all inferences arising therefrom must be construed most favorably toward the party opposing the grant of motion for directed verdict. *Sellers v. Wolverine Soap Co.,* 19 Ga. App. 295 (1) (91 SE 489); *McCarty v. National Life &c. Ins. Co.,* 107 Ga. App. 178, 179 (129 SE2d 408).

3. The majority opinion contends that defendant's evidence debars his right to recover in that when asked if he could testify as to any amount of reserve with Commercial Credit, he answered "No specific amount, no." But this was a suit for an *accounting.* Defendant testified that he and plaintiff had a contract for a

reserve fund to be set aside by plaintiff for defendant, depending on the number of "deals" he made each month for plaintiff, and that often-times there were twenty deals made each month (Tr. 22); that he had never received the correct amount due him (Tr. 23); that he could not testify as to the specific amount due him in the reserve fund (Tr. 31). He testified that his own books and records were lost or destroyed.

Under these circumstances, defendant's failure to testify as to the specific amount due him by plaintiff in no way authorizes a directed verdict against him. A suit for an *accounting* implies the lack of knowledge as to the exact amount due and may be brought at law as well as in equity. *Guarantee Trust &c. Co. v. Dickson,* 148 Ga. 311 (96 SE 561); *Peeples v. Peeples,* 193 Ga. 358, 365 (18 SE2d 629); *McDonough Const. Co. v. Ormewood Apts.,* 212 Ga. 620 (1) (94 SE2d 733). If defendant had known the exact amount due it would not have been necessary to resort to a suit for an accounting. The very purpose of a suit for an accounting is to have it determined as to the exact amount due, because the party himself does not know the exact amount due, and it is necessary usually to consider a number of transactions and figures in order for a fact-finding body (an auditor or a jury) to arrive at the amount due. So long as *something* is due, even though the party does not know how much, this is the proper basis for a suit for an accounting. *Gould v. Barrow,* 117 Ga. 458 (43 SE 702); *Bowman v. Chapman,* 179 Ga. 49 (2) (175 SE 241).

4. The defendant Andrews sought to introduce a receipt for one transaction *which would have substantiated his contention for a nominal amount* but that this receipt did not become a part of the transcript because on objection the court declined to admit it into evidence. This very point has been before the Appellate Courts of Georgia several times, and it has been held repeatedly that where the trial court rejects material and admissible evidence offered by a party, it is error to thereafter direct a verdict against that party. *Proctor & Gamble Co. v. Blakely Oil Co.,* 128 Ga. 606 (1) (57 SE 879); *Fountain v. Hagan &c. Mfg. Co.,* 140 Ga. 70 (2) (78 SE 423); *Thompson v. Central of Ga. R. Co.,* 102 Ga. App. 5 (2) (115 SE2d 471).

5. The majority opinion contends that the burden is on the defendant to present evidence to the jury in such manner that the jury may calculate the amount without guesswork, and cites *Lansdale Clothes, Inc. v. Wright,* 217 Ga. 817 (2) (125 SE2d 502); *Williams & Templeton v. Brewer,* 93 Ga. App. 603 (1) (92 SE2d 586);

*Thomas v. Campbell,* 126 Ga. App. 675 (3) (191 SE2d 619). Those cases do not support the premise contended for by the majority opinion. The *Lansdale* case is one where defendant admitted a prima facie case in the plaintiff. *Brewer* is a suit for illegal cutting of timber by trespassers; and *Thomas* is where the defendant (tenant) counterclaimed for the specific dollar amount that the rental property had been reduced, but offered no evidence to support such allegation. Clearly these cases are inapplicable. In a suit for an accounting perhaps the jury knows exactly what items and figures it allows, and which ones it disallows, in arriving at the money-value of the verdict; still to the on-looker perhaps it may appear that some slight "guesswork" is involved along the route between presentation of evidence and arrival at the final verdict.

6. Finally, in this case, defendant testified that there was an agreement between him and plaintiff whereby plaintiff was to set up a reserve fund for defendant, based on the number of transactions (deals) per month that defendant completed for plaintiff. Plaintiff denied the existence of such agreement. This itself constitutes an issue which could be solved only by a jury; not by the trial judge in directing a verdict. Further, defendant testified that "over the period of a year from 1967-1968 and 1969 at one particular time I was giving them twenty deals a month" and that it was $29.51 and $29.52 credit for a "short deal" (Tr. 22); and that this went on through the year 1968 and into 1969 (Tr. 24). W. A. Wilhelm, witness for plaintiff, and who was an official of plaintiff corporation, testified that a certain document called "Dealer's copy" was mailed to the dealer for his records, and in the lower left hand corner it bore the caption "Dealer Reserve," and written thereunder was "Regular Twenty-nine Dollars and fifty-one cents . . . " and that he assumed it was sent to Mr. Andrews (defendant) (Tr. 14). Construing this testimony most favorably to defendant—as must be done in considering a motion for directed verdict — it shows at least two years of transactions (deals) at approximately twenty deals per month—at approximately $29.52 per deal, which would have amounted to a credit reserve in favor of defendant of approximately $13,169.60, which is considerably in excess of the amount plaintiff sued for. All of this evidence most certainly should have been considered by the jury on the question of accounts, instead of the trial judge's directing a verdict for plaintiff.

I, therefore, would reverse the trial court in directing a verdict for plaintiff and dissent from the majority opinion.