## 49173. CARR v. JACUZZI BROTHERS, INC.

EBERHARDT, Presiding Judge.
J. C. Carr, who had been in the well drilling business for 20 years or more, purchased line shaft turbine pumps and submersible pumps from Jacuzzi Brothers, who manufactured them, for installation in the wells.

He brought suit against Jacuzzi to recover damages which he says he suffered because of failure of certain of the pumps to operate properly and which he says arose from the manufacturer's negligence in design and manufacture and to a breach of its warranty of merchantability.

Mr. Carr testified that there had been certain conditions of sale and warranty both in Jacuzzi's catalog from which he ordered merchandise and on the back of all invoices for the materials purchased, but that he had never read them. When these were produced it appeared that by an express warranty against defects in workmanship and materials it was limited to merchandise returned within one year from the date of purchase. He admitted that a one-year warranty was common to the industry as a whole, and he understood that this applied with Jacuzzi.

A number of the pumps failed, either because of a whip in the line, or some defect in the bearings, but with possibly one exception (L. H. Singletary) the failures all occurred more than a year after actual installation. An expert, a metallurgic engineer, testifying for the plaintiff,

had found variances in the diameters of some of the rubber bearings of from 5/1000 to 10/1000 of an inch, which he could not say was beyond an allowable tolerance, but in his opinion the alignment of the line shaft had not been sufficiently close to keep a whipping action from developing and causing the bearings to swell and freeze, and to cause accumulating rust in the pipe to come loose and go into the pumped water. However, he had seen none of the installations and could not say whether the faulty alignment may have resulted from manufacture or installation. He had made no measurements showing that the equipment as manufactured was not within tolerance for necessary and proper use, or that it was not reasonably suited for the uses intended.

Mr. Carr testified that the complaint which he received from his customers was "red water" in the lines which came from rust in the line shafter or column, which resulted in staining clothing washed in the water. He attributed the presence of iron rust to alignment and bearing troubles, admitting however, that the presence of rust on the inside of the column was to be expected, but asserting that without the whipping or vibrating of the shaft the rust would not come loose and cause trouble.

Because of this red water problem he had pulled the shafts and made repairs and replacements of bearings on a number of his customers' pumps, but he had kept no record as to the cost of labor or material used in doing so. There were further repairs to be made on some of these pumps and on others. An estimate was made of the cost, including the repairs already made and those which would have to be made in the future. It was prepared by his attorney and used by him in testifying. "I have no adequate records as to my expenses in making the repairs," he stated, and asserted that "we are making claims for what we are going to have to do ultimately."

He became dissatisfied with Jacuzzi pumps and returned all new equipment in his inventory to its plant, for which he received full credit. He also returned some used equipment, for which Jacuzzi was unwilling to allow credit, the return being made more than a year after sale.

He had brought Jacuzzi pumps, etc. from its plant at Loanoke, Arkansas to his place of business at Thomasville on his trucks and Jacuzzi had agreed to allow him credit for transportation at common carrier rates, but he now seeks recovery on the basis of what it had cost him to haul it on his trucks, and offered no proof of what the common carrier rates or amounts would be.

He seeks recovery of profits from well drilling jobs which he says he lost because of being tied up with making repairs on Jacuzzi pumps which had been installed for his customers. No figures were given as to what the price of the alleged lost jobs would have been, or of what the cost of labor and equipment would have been, or as to what kind of equipment would have been required.

As to the submersible pumps, he had made claim to Jacuzzi on only three or four of them, and Jacuzzi offered one hundred dollars credit for those items, which plaintiff accepted.

*Jacuzzi had supplied owners' manuals for each of the pumps and plaintiff had delivered those to his customers when he installed the pumps.* These contained an express warranty, which excluded implied warranty, limited in scope and as to time. He had never given Jacuzzi notice of any claim of a breach of warranty as required by Code Ann. § 109A-2—607(3)(a), but he had informed one of the salesmen that he was having some problems.

At the close of plaintiff's evidence defendant's motion for a directed verdict was sustained and plaintiff appeals from the judgment entered thereon. *Held:*

1. Plaintiff wholly failed to show any negligence in the design or manufacture of the pumps and equipment in question. There is simply no evidence of it or from which it might reasonably be inferred.

2. There is a total absence of evidence to prove damages in accordance with the measure provided in Code Ann. § 109A-2—714 (2) relative to proof of value.

3. In his proof plaintiff lumped his claims for repairs made to pumps, and on which he had kept "no adequate records" as to cost, with estimates of what he expects to be required to spend *in the future* for maintenance and repairs. Even if these had been

separated the proof would not authorize a recovery. As to the repairs already made plaintiff was required to supply to the jury sufficient information to enable it to reach a conclusion without speculation or guesswork. *Andrews v. Commercial Credit Corp.,* 129 Ga. App. 294, 296 (2) (199 SE2d 383) and cits. But he did not supply that proof.

The same would be true as to the repairs that plaintiff says he will have to do for his customers at some time in the future, if that were a recoverable item, but it is not. *Hughes v. Brown,* 109 Ga. App. 578 (1) (136 SE2d 403); *Bennett v. Associated Food Stores,* 118 Ga. App. 711, 714 (2) (165 SE2d 581); *Allen Tile &c. Co. v. Vinyl Plastics,* 99 Ga. App. 186, 188 (107 SE2d 881). "The rule of law that no person can bring an action until he has been actually damaged is applicable here." *Terrell v. Stevenson,* 97 Ga. 570, 572 (25 SE 352).

4. The proof falls short of showing a breach of implied warranty even if one were not excluded by the express warranty. Plaintiff's expert on this asserted that he could not say and had made no measurements which indicated that the pump, bearings, etc. was not within a tolerance for necessary and proper use or that it was not reasonably suited for the purposes intended. That the pumps may have produced "red water," arising from faulty installation or other causes, does not show a breach.

If plaintiff did not read the warranty on the pumps, supplied to him with each pump purchased so that he might know its provisions and so that he might pass it on to the customer upon purchasing a pump, it was his own fault. It was a part of the contract of sale, and one "who can read must read, or show a legal excuse for not doing so, and that fraud which will relieve [him from reading] must be such as prevents him from reading." *Lewis v. Foy,* 189 Ga. 596, 598 (6 SE2d 788). And see *Beckwith v. Peterson,* 227 Ga. 403, 404 (1) (181 SE2d 51); *Livingston v. Barnett,* 193 Ga. 640 (4) (19 SE2d 385); *West v. Carolina Housing &c. Corp.,* 211 Ga. 789 (89 SE2d 188); *Budget Charge Accounts v. Peters,* 213 Ga. 17 (3) (96 SE2d 887); *Martin v. Alford,* 214 Ga. 4, 7 (102 SE2d 598).

In any event, plaintiff testified that he was aware

that the pump industry sold pumps under a one-year warranty on parts and workmanship, and that it was his understanding that this was true as to pumps purchased from the defendant Jacuzzi. He knew of the warranty.

5. Plaintiff concedes that he failed to prove the common carrier transportation rates for which he should have credit because of hauling on his own trucks, but urges that defendant was in better position to have done so. This is to overlook the fact that the burden of proving his case is on the plaintiff and that the defendant is not required to assist him in doing so. Code § 38-103; *Oliver v. Wilson,* 29 Ga. 642, 644 (3); *Seagraves v. Couch & Jackson,* 168 Ga. 38 (4b) (147 SE 61).

6. The profits alleged to have been lost from the loss of jobs coming up when plaintiff was busy making repairs, without more, is wholly speculative and too remote for a recovery. Code §§ 105-2008, 105-2009; *Cooper v. National Fert. Co.,* 132 Ga. 529, 535 (64 SE 650); *Norris v. Pig'n Whistle Sandwich Shop,* 79 Ga. App. 369 (53 SE2d 718); *Williams & Templeton v. Brewer,* 93 Ga. App. 603 (92 SE2d 586); *Georgia Grain Growers Assn. v. Craven,* 95 Ga. App. 741, 745 (98 SE2d 633).

7. Plaintiff simply failed to prove his case and the direction of a verdict was proper. Code Ann. § 81A-150. The mere existence of conflicts in the evidence does not render the direction of a verdict erroneous if it was demanded, either from proof or from lack of proof on the controlling issue or issues. *Stepp v. Stepp,* 195 Ga. 595 (2) (25 SE2d 6).

*Judgment affirmed. Bell, C. J., Pannell, P. J., Quillian, Clark, Stolz and Webb, JJ., concur. Deen and Evans, JJ., dissent in part.*

ARGUED APRIL 4, 1974 — DECIDED SEPTEMBER 9, 1974 — REHEARING DENIED OCTOBER 18, 1974 — ■

*Carr & Abney, W. Pitts Carr,* for appellant.
*Gambrell, Russell, Killorin, Wade & Forbes, David A. Handley, Robert B. Wedge,* for appellee.

Evans, Judge, dissenting in part.

Carr purchased certain water pumps from Jacuzzi Brothers, Inc., and used said pumps for a period of several years. During this time, Carr encountered various difficulties with the pumps; and finally Carr sued Jacuzzi, alleging defendant had made false representations; had negligently designed and manufactured the product; and had breached the implied warranties of suitability for the purposes for which the pumps were sold; as well as to merchantability of the pumping equipment. He prayed for damages, an accounting as to the pumping equipment which Carr alleged he had returned to Jacuzzi, and the payment of freight, and credit for defective parts which had to be replaced.

At the end of plaintiff's testimony, defendant moved for a directed verdict and contended: (a) No evidence of defects was introduced; (b) No breach of warranty, express or implied, had been proven; (c) There had been an accord and satisfaction by and between the parties, as to return of the equipment with a mutual accounting, and including the submersible pumps; (d) The claims for repairs were premature; (e) All lost profits were purely speculative; (f) There was a failure to prove notice of the alleged breach of warranty as to the pumps; (g) There was a failure to prove the claims for transportation expenses. The court then directed the jury to return a verdict against plaintiff and for the defendant as to all counts. Plaintiff appeals.

In considering a motion for directed verdict, all of the evidence and all inferences arising therefrom must be construed most favorably toward the party opposing the motion. *Sellers v. Wolverine Soap Co.,* 19 Ga. App. 295 (1) (91 SE 489); *McCarty v. National Life &c. Ins. Co.,* 107 Ga. App. 178, 179 (129 SE2d 408).

The majority opinion affirms the trial judge in its direction of the verdict. I disagree. The direction of a verdict is proper only when there is no conflict in the evidence as to any material issue; and when the evidence as introduced, with all reasonable deductions, demands a verdict. Code Ann. § 81A-150 (a) (§ 50 CPA; Ga. L. 1966, pp. 609, 656); *State Farm Mut. Auto Ins. Co. v. Snyder,* 125 Ga. App. 352 (187 SE2d 878); *Isom v. Schettino,* 129

Ga. App. 73 (199 SE2d 89).

1. As to defendant's contention that the evidence is speculative as to repairs and future maintenance; as to loss of profits due to breakdown of pumps already installed, and which would cause plaintiff to lose certain business while making repairs, I agree with the majority opinion in Divisions 3 and 6 that said items of damages are too remote and wholly speculative for a recovery. See *Georgia Grain Growers Assn. v. Craven,* 95 Ga. App. 741, 747 (98 SE2d 633) as follows: "Profits which are remote, or speculative, contingent or uncertain are not recoverable."

2. But I do not agree with that part of the opinion which asserts that there was a total absence of evidence in support of plaintiff's damages. The plaintiff offered testimony which was properly admitted and was sufficient for the jury to make a determination as to whether or not the resulting damage from red (rusty) water, swelling bearings, breaking shafts, stuffing boxes locking up, and the wearing out of bowl assemblies were due to the faulty equipment or to faulty installation, or other causes. Plaintiff testified that he installed the equipment properly; and the jury very easily could have determined that the history of necessary replacement on the various jobs indicated the replacement was necessary because of impellers wearing out prematurely, and other defects in the machinery. The resulting wear and increased rusting was evidence to show that the pumps were unsuitable for the purposes intended.

3. A very important phase of this case is the question of *warranty.* Defendant contends that there was no *implied warranty* because there was an *express warranty;* and that express warranty excludes implied warranty.

But there was never any proof introduced to show that there was an express warranty in this case. Plaintiff's complaint did not so allege; defendant's answer did not so allege; the depositions and interrogatories of plaintiff and defendant give no such testimony.

Plaintiff testified that he had never read the conditions of sale or an express warranty in this case; he

had never read the catalogue which may or may not have had such express warranty therein; he had never been involved in a warranty on pumps since he had been in the pump business; that he had *"at some point in time"* become aware that customarily the turbine pump industry as a whole carries a one year guarantee on parts and workmanship; that his "understanding" was that Jacuzzi Brothers warranted the merchandise and equipment against defect for one year — *but he did not testify as to when he gained this understanding nor from whom he gained it.* (Tr. pp. 56-59). He may have gained this understanding from mere hearsay only, and at a time long after the transaction between the parties had ended, perhaps two or three days before the actual date of trial of the case.

In this situation it became the duty of defendant to prove a one year warranty if it wished to rely on same and to use it as proof that no implied warranty existed. All testimony and evidence and inferences arising from evidence in motions for directed verdict *must be construed most favorably towards the party opposing the motion. Whitaker v. Paden,* 78 Ga. App. 145 (1) (50 SE2d 774); *Curry v. Durden,* 103 Ga. App. 371 (1) (118 SE2d 871); *Northwestern University v. Crisp,* 211 Ga. 636, 647 (88 SE2d 26).

While there is authority that suggests an express warranty may exclude implied warranty, it depends entirely and solely on the language in the express warranty as to whether there is an exclusion. See Code Ann. §§ 109A-2—315, 109A-2—316 (Ga. L. 1962, pp. 156, 190; 1971, pp. 457, 458).

In this case, if defendant is to prevail in its contention that express warranty excludes implied warranty, then it was absolutely incumbent upon defendant to introduce and prove the express warranty; so the court could study it and ascertain whether by its language implied warranty was excluded. But defendant did not introduce and prove an express warranty. We do not have it before the court; and consequently no one can say that implied warranty is excluded in this case.

4. The question of accord and satisfaction and mutual accounting by and between the parties with the

return of the equipment was a factual question and issue for determination by the jury. The jury would be required to decide as to the amount due if there was a mutual accounting; and whether there was an accord and satisfaction between the parties.

5. Also the alleged settlement as to the submersible pumps, with their return and the acceptance of credit, created a question of whether or not there was an accord and satisfaction of these items. As to the common carrier transportation rates, plaintiff testified he returned the items himself to Arkansas and defendant promised to pay as expenses the common carrier rates. If his expense does not exceed the common carrier transportation rates, plaintiff would be entitled to recover same; otherwise, he would be limited to the amount of common carrier charges for these items. Of course, if the jury decided that defendant did not promise to pay these expenses, plaintiff would not be entitled to recover for same.

While some of plaintiff's testimony was technical, there was ample evidence to authorize a finding by the jury in plaintiff's behalf. I therefore would vote to reverse the lower court in granting a directed verdict on all counts except as to the claim for lost profits and future repairs which appear to be too speculative and remote.

I am authorized to state that Judge Deen joins in this dissent.