## 76735. GENERAL HOSPITALS OF HUMANA, INC. v. JENKINS.
### (374 SE2d 739)

SOGNIER, Judge.

Ben H. Jenkins, M. D., brought suit against General Hospitals of Humana, Inc., alleging tortious interference with business relations, tortious interference with contract rights, restraint of trade, and intentional infliction of emotional distress, and seeking a declaratory judgment in regard to the validity of a lease agreement. At a pretrial hearing, a consent order was entered allowing Jenkins to remain in possession of disputed rental premises and pay the monthly rent pending a trial on the declaratory judgment portion of the case and a claim for expenses and attorney fees. Those issues were tried by a jury, whose answers to interrogatories determined, inter alia, that a valid oral lease existed and that Jenkins was entitled to $15,000 for attorney fees and expenses of litigation. Final judgment was entered as to these issues on the jury's special verdict pursuant to OCGA § 9-11-54 (b), and General Hospitals of Humana appeals.

The record reveals that appellee, a physician who had been practicing medicine in the community for over thirty years and had been instrumental in establishing the county hospital which is now operated by appellant, had rented office space from appellant adjacent to appellant's hospital facility in Newnan pursuant to a written lease from April 1, 1984 until March 31, 1987. At the time appellee agreed to move his medical offices into that space, he was told he needed no renewal option in the lease, but would be able to renew his lease as long as he paid rent. At no time during the course of the three-year written lease was appellee ever in default in his rental payments. However, during that time, a change occurred in appellant's administration and, although appellee had received recognition for his services to the hospital, differences in regard to administration policies (some of which are the subject of the remaining counts of the lawsuit but were not before the court in this trial) developed between appellee and Jack D. Davis, the executive director of appellant's hospital.

Shortly before appellee's written lease expired, he was approached about renewing his lease by the associate executive director of the hospital, Howard Lott, whose duties included the preparation and presentation of leases to physician tenants. All discussions concerning lease renewal took place between appellee and Lott and, after several discussions regarding lease terms, an agreement was finally reached on a one-year lease at a rate 10 percent higher than the rate in the old lease, which was identical to the increases being given the other doctor tenants. Lott then prepared the lease containing the terms to which they had agreed, including a March 31, 1988 termination date, and delivered it to appellee's office. Appellee signed the lease but did not immediately return it to Lott. Thereafter, on May

13, 1987, while appellee was on vacation, Davis wrote appellee a letter attempting to rescind the lease negotiated by Lott and advising appellee to vacate the premises. That demand was repeated in a letter from Davis dated June 11, 1987, stating that since the offer to lease space had been rescinded by the May 13 letter, and "we have not communicated since that correspondence, I do want you to know that we intend to have you vacate [the premises] on or about June 13, 1987 . . . ."

Appellee filed the instant action, alleging that because of the past conduct and actions of appellant and Lott, appellant should be estopped from contending that Lott did not have the authority to discuss, prepare, present and offer the renewal to him or to bind appellant to those terms. He further contended that appellant's actions had been in bad faith, stubbornly litigious, and had caused him unnecessary trouble and expense, thereby entitling him to recover reasonable attorney fees and expenses of litigation should the jury find that he was entitled to remain in the office under the terms of an oral lease.

Lott testified at trial that there was no question in his mind that he and appellee agreed on the essential terms of length and rental rate that were typed into the standard renewal form that was submitted by him for appellee's signature. Appellee testified that he failed to return the signed renewal lease to appellant immediately because he "didn't think it was anything so earth shaking that I had to do it right then. I knew we had a deal anyway."

1. In its first four enumerations of error, appellant contends the trial court erred by denying its motion for judgment n.o.v. or for new trial, alleging the absence of any evidence to support the jury's findings that there was a valid lease agreement. We note initially that we agree with appellant that although the purported oral contract expired on March 31, 1988, and appellee no longer occupies the premises, the correctness vel non of the jury's determinations on the validity of the lease must still be addressed because the award of attorney fees and expenses of litigation depended on the jury's determination of the lease issues.

Appellant argues that a lease agreement could not have been established because the condition precedent in the written contract requiring the signatures of its officers was never satisfied. We find this argument fallacious. The written lease was not executed and, therefore, its terms and conditions never became effective. Nor did appellee seek specific performance of the written lease. Rather, he sought a determination that, based on the law and the evidence presented at trial, an oral lease resulted between him and appellant for a period of one year at a rental rate of 10 percent in excess of the rate in the previous lease. OCGA § 44-7-2 (a) provides that "[c]ontracts creating

the relationship of landlord and tenant for any time not exceeding one year may be by parol." Appellant's reliance on *20/20 Vision Center v. Hudgens*, 256 Ga. 129 (345 SE2d 330) (1986), and *Seligman v. Savannah Wholesale Co.*, 185 Ga. App. 250 (363 SE2d 785) (1987), is misplaced, as the lessees in those cases did not seek to establish valid oral leases but specifically sought to enforce written contracts.

It was undisputed here that Lott and appellee agreed upon a renewal lease upon the terms discussed above, and that both considered the matter to be resolved. There was no evidence that either party contemplated that the oral agreement would become effective *only* if it was reduced to writing and signed by appellant's officers, although they both *expected* the written lease would be executed. The sole probative value of the unexecuted written lease would have been to demonstrate this expectation or, alternatively, the intention not to enter into an oral lease. The jurors had this evidence before them, and no doubt considered it in arriving at their verdict. "Considering all of the evidence together, the jury was authorized to find that there was a 'meeting of the minds' as to all of the terms of the contract and a present agreement to lease the premises. Although the parties contemplated the future execution of a written lease agreement, the jury was authorized to find that a binding oral agreement was in effect, and the failure to sign the written instrument did not affect the validity of the oral agreement." *Merry v. Ga. Big Boy Mgt.*, 135 Ga. App. 707, 708 (1) (218 SE2d 694) (1975).

2. In its final two enumerations of error appellant contends the trial court erred by denying its motions for judgment n.o.v. and for a new trial because the award of attorney fees and expenses of litigation pursuant to OCGA § 13-6-11 was improper in this declaratory judgment case.

We do not agree with appellee that we are precluded from addressing the merits of appellant's enumerations of error pertaining to the award of attorney fees and expenses of litigation in this action. Appellee argues, relying on *Joseph v. Bray*, 182 Ga. App. 131 (1) (354 SE2d 878) (1987) and *Tanner v. Gilleland*, 186 Ga. App. 377 (367 SE2d 257) (1988), that because this issue was not raised in appellant's motions for a directed verdict, it may not be raised on appeal. However, the record reveals that appellant objected at trial to the introduction of any evidence pertaining to attorney fees, on the ground that attorney fees and expenses of litigation were improper here. Appellant's post-trial motion, which also raises this ground, was not *only* a motion for judgment n.o.v. but also, alternatively, a motion for a new trial. See OCGA § 9-11-50 (b). Thus, although appellant may not raise the denial of its motion for judgment n.o.v. as to this issue because the grounds were not specified in its motions for directed verdict, see *Glenridge Unit Owners Assn. v. Felton*, 183 Ga. App. 858(2)

(360 SE2d 418) (1987), it *may* enumerate as error the denial of its motion for new trial as to the introduction of evidence regarding attorney fees, having properly objected to the introduction of this evidence at trial. See OCGA § 5-5-22.

Turning, then, to the merits of appellant's enumeration, we find that the award of attorney fees and expenses of litigation is fatally flawed in this context. Although the complaint, as amended, sought damages for various alleged torts in addition to seeking a declaratory judgment, and we intimate no opinion as to the recoverability of expenses of litigation and attorney fees in connection with those claims, those claims are still pending and have not yet been tried. It is undisputed that the sole issue actually tried and now reviewed here was the declaratory judgment, to which the claim for attorney fees was appended.

The purpose of a declaratory judgment is "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." OCGA § 9-4-1. In *Shippen v. Folsom*, 200 Ga. 58 (35 SE2d 915) (1945), the first case in the Georgia Supreme Court addressing the declaratory judgment statute, the court made the oft-quoted remark that prior to the passage of the declaratory judgment act " 'you [would] take a step in the dark and then turn on the light to see if you stepped into a hole. Under the declaratory judgment law you turn on the light and then take the step.' " Id. at 67-68. "Uncertainty" and "insecurity" are, by definition, necessary before the courts will entertain an action for a declaratory judgment, and its purpose is to permit one to seek direction from the courts as to the propriety of future conduct which might jeopardize one's interest. *Pendleton v. City of Atlanta*, 236 Ga. 479 (224 SE2d 357) (1976). Absent this requirement of uncertainty on the part of appellee, no declaratory judgment would have been possible. However, this same requirement of uncertainty makes the award of attorney fees under OCGA § 13-6-11 to appellee in this action impossible.

OCGA § 13-6-11 provides that "[t]he expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." It is clear that no attorney fees are recoverable under this section for stubborn litigiousness or causing unnecessary trouble and expense where there exists between the parties a bona fide controversy, *Buffalo Cab Co. v. Williams*, 126 Ga. App. 522 (191 SE2d 317) (1972), such as was present here in regard to whether there existed a valid lease agreement. Although this court has held that an award of attorney fees may be made under OCGA § 13-6-11 despite a bona fide controversy between the parties where attorney fees are

sought on the ground that the party has acted in bad faith, *Formica Corp. v. Rouse*, 176 Ga. App. 548, 549 (336 SE2d 383) (1985), the "bad faith" alleged here was the same conduct showing stubborn litigiousness — i.e., appellant's insistence that it was not bound because there was no executed written contract. In these circumstances, "[s]uch bad faith damages are not recoverable where there exists a bona fide controversy. [Cit.]" *Hightower v. Gen. Motors Corp.*, 175 Ga. App. 112, 115 (332 SE2d 336) (1985).

Although penalties and attorney fees for "bad faith" have been awarded numerous times in declaratory judgment actions involving an insurance carrier's refusal to pay a claim, the award of attorney fees in those cases usually involved a different standard under a different statute. OCGA § 33-4-6. Even in those few cases which did involve OCGA § 13-6-11, see, e.g., *Hilde v. U. S. Fire Ins. Co.*, 184 Ga. App. 611 (362 SE2d 69) (1987), we have found no cases, and appellee has cited none, involving the award of attorney fees to the *plaintiff* in the declaratory judgment action, for whom the threshold requirement of uncertainty raises the specter of a bona fide controversy defense.

Under the circumstances presented here, where the substantial uncertainty and disagreement between the parties led appellee to seek a declaratory judgment as to whether a contract existed between the parties, the award of attorney fees pursuant to OCGA § 13-6-11 was improper and is accordingly reversed.

*Judgment affirmed in part and reversed in part. Birdsong, C. J., McMurray, P. J., Banke, P. J., Pope and Benham, JJ., concur. Deen, P. J., Carley and Beasley, JJ., dissent.*

DEEN, Presiding Judge, dissenting.

While I agree fully with the first division of the majority opinion, I must respectfully dissent from the holding in Division 2 because I do not believe that the issue of awarding expenses of litigation and attorney fees was properly raised or preserved for review.

Humana moved for directed verdict both at the close of Jenkins' evidence and the close of the case, asserting as the sole ground of both motions that because the proper officials did not sign the written renewal lease as required by the condition precedent therein, no oral lease could have resulted. The trial court denied both motions and the case was submitted to the jury on interrogatories. Humana made no objection to these interrogatories or to any instructions given the jury, including charges on the issues of a valid oral contract, an agent's apparent authority and expenses of litigation under OCGA § 13-6-11.

The jury's answers to the interrogatories determined (1) that Lott did have the authority, either actual or apparent, to bind Humana to an oral lease with Jenkins; (2) that Lott and Jenkins en-

tered into an oral lease agreement on the essential terms to renew his occupied office space for a term of one year beginning April 1, 1987; (3) that Jenkins and Humana agreed to reduce their oral lease agreement to writing; (4) that Jenkins and Humana did not agree that they would not be bound by their oral lease agreement unless it was subsequently reduced to writing and signed by both parties; and (5) that Jenkins be awarded $15,000 for expenses of litigation. Humana filed a motion for judgment notwithstanding the verdict, or in the alternative for a new trial, again on the basis of Jenkins' failure to prove that the condition precedent of the written lease renewal agreement had been satisfied, and also challenging the propriety of the award of attorney fees and expenses. This motion was denied and the trial court thereafter amended its judgment on the verdict to direct entry of a final judgment on these issues pursuant to OCGA § 9-11-54 (b), upon the express determination that there was no just reason for delaying the appeal.

Although Humana's arguments on appeal attack all of the determinations made by the jury in reaching its verdict, no objections were made to the interrogatories upon which it was based prior to their submission to the jury or to the instructions given on these issues. Moreover, the record reveals that the pretrial order agreed to by both parties stated that imposition of attorney fees and costs of litigation would be one of the issues in the case. Parties to stipulations entered into during the course of judicial proceedings are estopped to complain when the results of such agreements or stipulations work adversely to their positions. *Thompson v. Wise*, 182 Ga. App. 335 (356 SE2d 40) (1987); see also *McDonald v. Hester*, 115 Ga. App. 740 (155 SE2d 720) (1967).

The trial transcript reveals that shortly before the close of appellee's evidence appellant, out of the hearing of the jury, objected to the admission of evidence regarding attorney fees and litigation costs, but that the trial court replied that he had previously ruled adversely to that position, in accordance with *Yost v. Torok*, 256 Ga. 92 (344 SE2d 414) (1986) (see also OCGA § 9-15-14); and that such evidence should and would be admitted. Thereafter, counsel for plaintiff/appellee testified briefly as to the amount of time spent on the case by himself and his paralegal at their respective hourly rates. However, at the close of all the evidence appellant made absolutely no objection to the trial court's distribution to the jurors of the interrogatories which would form the verdict, including Nos. 6 and 7, which dealt respectively with whether attorney fees and litigation costs should be awarded; and if so, in what amount. Nor was any objection raised to the trial court's instructions as to what considerations the jurors should take into account in determining the answers to the interrogatories. Thus, not only did appellant ratify the inclusion of evidence

regarding attorney fees and litigation costs by participating in the pretrial order, but it subsequently waived any intermediate objection that might have been raised when it failed to object to the interrogatories and the accompanying instructions. Furthermore, the language of OCGA § 5-5-22 is merely permissive, and the trial court therefore did not err in denying the motion on that ground.

Since appellant's sole assertion in both of its motions for directed verdict which was validly raised in its motion for judgment n.o.v. or new trial was that the oral lease agreement could not be established due to noncompliance with the condition precedent in the written contract, that is the only question this court is called upon to examine. " 'A motion for a directed verdict shall state the specific grounds therefor.' OCGA § 9-11-50 (a). 'A ground not mentioned in a motion for directed verdict cannot thereafter be raised on appeal. [Cits.]' " *Grabowski v. Radiology Assoc.*, 181 Ga. App. 298, 299 (2) (352 SE2d 185) (1986). Accord *Johnson v. Hensel Phelps Constr. Co.*, 250 Ga. 83 (295 SE2d 841) (1982); *Allgood Rd. &c. Church v. Smith*, 173 Ga. App. 28 (1) (325 SE2d 392) (1984). Likewise, "[t]he grounds asserted in the motion for judgment n.o.v. and on appeal will not be considered because they were not asserted in support of the motions for directed verdict as required by OCGA § 9-11-50 (b). [Cit.]" *Glenridge Unit Owners Assn. v. Felton*, 183 Ga. App. 858 (2) (360 SE2d 418) (1987); *Revco Discount Drug Centers v. Famble*, 173 Ga. App. 330 (3) (326 SE2d 532) (1985).

It is thus clear that by failing to assert the other grounds now argued, either by way of a directed verdict so as to preserve them as the basis for a motion for judgment n.o.v., or by timely objections for consideration in a motion for new trial, Humana may not now raise these issues on appeal. *Dubberly v. P. F. Moon & Co.*, 184 Ga. App. 221 (3) (361 SE2d 223) (1987); *Gorlin v. Halpern*, 184 Ga. App. 10 (7) (360 SE2d 729) (1987); *Long v. Marion*, 182 Ga. App. 361 (1) (355 SE2d 711) (1987); *F.A.F. Motor Cars v. Childers*, 181 Ga. App. 821 (4) (354 SE2d 6) (1987). It follows that even if attorney fees are not recoverable in declaratory judgment actions, as Humana now asserts, "[n]o motion [for directed verdict] having been made on the issue of attorney fees awarded pursuant to OCGA § 13-16-11, this question will not be considered for the first time on appeal." *Joseph v. Bray*, 182 Ga. App. 131 (1) (354 SE2d 878) (1987). Accord *Tanner v. Gilleland*, 186 Ga. App. 377 (367 SE2d 257) (1988).

I therefore respectfully dissent from Division 2.

BEASLEY, Judge, dissenting.

I respectfully dissent. I would concur with the majority opinion with respect to the attorney fees issue except that in my view it would not be reached because I depart from both the majority and dissent-

ing opinions with respect to the oral lease issue.[1]

"Where's the lease?"

The original lease, and the written renewal document submitted to Jenkins and signed by him, provided at the close immediately above his signature:

"Condition Precedent. Notwithstanding anything contained herein to the contrary, this Lease shall not be effective or legally binding upon the parties hereto until it has been reviewed and approved in writing by Landlord's Regional Vice-President or designee and its Legal Counsel."

The law provides: "A condition precedent must be performed before the contract becomes absolute and obligatory upon the other party." OCGA § 13-3-4.

Thus, to be effective, the lease had to be signed by the designated persons and, of necessity, it had to be in writing, for one cannot sign a non-existent document. It is totally contradictory to say that the parties could and did orally agree to be bound by an agreement which, to be effective, had to be not only in writing but also approved in writing by two persons not part of the negotiations.

The original lease was signed by both parties (Lott was not the signer as landlord's representative although he had negotiated it), and the vice president and legal counsel signed as having approved.

Jenkins testified that the renewal lease was to be the same as the original lease, but for the rental rate and time period. It was. He testified without deviation that the document which Lott sent was, except for rate and period, "exactly like the one I signed before," "identical," and because it was in conformity with what he and Lott had negotiated, he signed it. He expressly admitted the Condition Precedent was part of the renewal lease.

However, although Jenkins intended to deliver the document back to the landlord's negotiating representative, he did not do so. Thus its execution was never completed with the signature of landlord's representative (not Lott) and written approval of the vice president and legal counsel. It is undisputed that they never even knew Jenkins had signed it. Instead, Jenkins as prospective lessee kept control of the document and could have ignored or discarded it with no breach of it resulting. Everyone, including the jury, seems to agree that there was no binding written lease.

There was no evidence that the parties intended an oral lease,

---

[1] Contrary to the statement in the majority opinion, Jenkins did not seek to enforce an oral agreement when he filed suit. In his original complaint, and even as amended, he bottomed his tenancy on the written document as "the lease" and alleged that he "intends to honor all terms and conditions of said lease." It was only in the pretrial order that he contended there was an oral agreement.

much less one *without* the Condition Precedent. Jenkins admitted that he intended it to be in writing and "expected" it. He assumed it would be a written lease because that was the prior procedure followed and the other tenants had written leases. He acted on it when it was received, entering his signature and having his assistant sign as witness. Negotiations involved only the rental rate and time period. The other terms, which were many, were never mentioned because the parties intended that they would be the same as in the original written lease.

If the parties intended an oral lease, what were all of its terms, and what then was the purpose of the written document which *both* sides referred to as "the lease"?

Because the Condition Precedent goes to the very issue of whether the lease could be oral or written (there was in addition to the Condition Precedent an incorporation provision limiting the lease to its four corners[2]) and requires that it be written, which Jenkins agreed to, there could not possibly be an oral lease.

The Condition Precedent also goes to the very issue of whether the lease could be entered into by negotiator Lott. It requires otherwise, and Jenkins agreed to this provision, as he had before. So there could be no lease without signed approval.

The standard used to review the grant or denial of a directed verdict is the "any evidence" test. *Sheffield v. Kirkley*, 184 Ga. App. 877, 878 (1) (363 SE2d 68) (1987). Where there is no evidence to support the verdict, the judgment must be set aside. *Wright Contracting Co. v. Davis*, 93 Ga. App. 810, 816 (1) (92 SE2d 812) (1956); *Carr v. Jacuzzi Bros.*, 133 Ga. App. 70, 74 (7) (210 SE2d 16) (1974).

The fact that Jenkins sought declaratory judgment rather than specific performance is irrelevant. The determinative issue, which would be crucial in both instances, is whether there was a lease. Also, what Jenkins was told prior to entering into the original lease is irrelevant, because it as well as the renewal document contained an incorporation provision.

Likewise, the fact that the hospital did not voice objection to the interrogatories or instructions just prior to their submission to the jury does not preclude its insisting there was no lease. It steadfastly maintained, in motions for directed verdict, for JNOV, and for new trial, that there was no evidence of a binding lease, and it is these rulings which are enumerated as error. I find no authority for the pro-

---

[2] "Incorporation of Prior Agreement; Amendments. This Lease contains all of the agreements of the parties hereto with respect to any matter covered or mentioned in this Lease, and no prior agreement or understanding pertaining to any such matter shall be effective for any purpose. No provision of this Lease may be amended or added to except by an agreement in writing signed by the parties hereto or their respective successors in interest."

position that failure to object to jury interrogatories and instructions deprives a losing party of the right to review of these rulings.

In sum, all that Jenkins had was a tenancy as described in the provision for "End of Term" pursuant to the original lease. The oral negotiations did not constitute an oral contract but were simply oral negotiations which did not develop into an executed contract.

The effect of the majority decision is to allow the factfinder to create an oral lease out of every year-or-less written lease document which is not signed by both parties yet contains terms which are the same, including the provision that to be effective, the lease must be approved in writing by lessor's representatives.

I am authorized to state that Judge Carley joins in this dissent.

DECIDED SEPTEMBER 15, 1988 —
REHEARING DENIED OCTOBER 18, 1988 ▄▄▄▄▄▄▄▄

*Kevin E. Grady, Reta G. Jordan, Michael E. Sumner*, for appellant.

*Louis K. Polonsky*, for appellee.