75828. CREDITHRIFT OF AMERICA, INC. v. BORG-WARNER ACCEPTANCE CORPORATION.
(370 SE2d 801)

MCMURRAY, Presiding Judge.

Credithrift of America, Inc. (Credithrift) brought an action against Borg-Warner Acceptance Corporation (Borg-Warner) in two counts, seeking in Count 1 to protect security interests it allegedly held in five Harbor Craft speedboats which were purchased from Lanier Harbor Marine Sales & Service (Lanier Harbor) by one of Credithrift's customer's, Boat Trading, Inc. (Boat Trading), Credithrift further alleged that Borg-Warner seized the five boats, which were located at Lanier Harbor's place of business on Lake Lanier,

Gainesville, Georgia, thereby impairing its security interests in the boats. In Count 2, Credithrift sought attorney fees, costs, and "such other and further relief as the Court may deem just and proper," alleging that Borg-Warner acted in "bad faith" by seizing the boats with knowledge of Credithrift's security interests. Borg-Warner answered, denied the material allegations of the complaint and defended, alleging that it had superior security interests in the boats pursuant to an inventory security agreement it had with Norcross Marine, Inc.

The case was tried before a jury and the evidence authorized a finding that Borg-Warner is in the business of financing inventory for dealers of boats, motors and related marine merchandise. Borg-Warner had an inventory security agreement with Norcross Marine, Inc. (Norcross Marine), covering merchandise at Norcross Marine's locations in Norcross, Georgia and on Lake Lanier in Buford, Georgia. Archie Dave Dixon was the president of Norcross Marine and he also operated a marine supply business at the Lake Lanier location known as Lanier Harbor.

On May 13, 1985, Norcross Marine purchased five Harbor Craft speedboats from Harbor Craft, a boat manufacturer, and financed the boats through Borg-Warner. Two days later, Boat Trading, through its president, James Jordan, purchased the boats from Lanier Harbor. Boat Trading purchased the boats, financing them through Credithrift, in contemplation of operating a boat rental business located at Lanier Harbor on Lake Lanier. Archie Dave Dixon was to supply maintenance on the boats, insurance, advertising and operate the rental business in exchange for 50 percent of the boat rental proceeds.

Norcross Marine failed to pay Borg-Warner for the five boats and Borg-Warner later foreclosed on Norcross Marine's collateral, including the five speedboats at Lanier Harbor. Both Borg-Warner and Credithrift had perfected their security interests in the boats by filing financing statements in accordance with the Uniform Commercial Code. At the close of evidence, the trial court denied Credithrift's motion for directed verdict, and granted Borg-Warner's motion for directed verdict, finding that Boat Trading "was not a buyer in the ordinary course of business." This appeal followed. *Held*:

" 'OCGA § 9-11-50 (a) . . . provides in pertinent part that "(i)f there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed." In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. (Cit.) The standard used to review the grant or denial of a directed verdict is the "any evidence" test. (Cit.)' *Skelton v. Skelton*, 251 Ga. 631 (4) (308 SE2d 838) (1983)." *Leavell v.*

*Bentley*, 183 Ga. App. 366, 367 (1) (358 SE2d 907). From this perspective, we look to OCGA § 11-9-307 (1), which provides in part that "[a] buyer in ordinary course of business . . . takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." A " '[b]uyer in ordinary course of business' means a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind . . ." OCGA § 11-1-201 (9).

In the case sub judice, the evidence authorized a finding that Boat Trading purchased the five speedboats from the president of Norcross Marine, a dealer of marine products, and that Boat Trading did so as any other purchaser of goods in the ordinary course of business.[1] Although there was evidence to support the trial court's conclusion that the sale was somewhat less than "ordinary," thereby removing the shield provided to consumers under the Uniform Commercial Code,[2] " '(t)he court cannot direct a verdict where there is any reasonable inference supported by evidence which would authorize a verdict to the contrary. (Cit.).' *Findley v. McDaniel*, 158 Ga. App. 445, 447 (1) (280 SE2d 858) (1981)." *Leavell v. Bentley*, 183 Ga. App. 366, 367 (2), 368, supra. Accordingly, the trial court erred in granting Borg-Warner's motion for directed verdict. However, there was no error in the trial court's denial of Credithrift's motion for directed verdict as there was evidence to authorize a finding that Boat Trading was not a buyer in ordinary course. See *Associates Fin. Svcs. Co. v. Intl. Harvester Credit Corp.*, 127 Ga. App. 636 (194 SE2d 518). See 1 Anderson, Uniform Commercial Code 189-190, § 1-201:23.

---

[1] Although the undisputed evidence revealed that Boat Trading and the president of Norcross Marine entered into a business relationship for the rental of boats, this is not controlling on the issue of Boat Trading's status as a buyer in the ordinary course of business. "The fact that the buyer is related to the seller either by family or business relationship does not bar the buyer from being a buyer in ordinary course. Thus, the fact that the purchaser is an employee or a shareholder of the seller does not prevent the purchaser from being a buyer in ordinary course of business when the sale is made to him in the same way that it would be made to members of the general public." 1 Anderson, Uniform Commercial Code 194, § 1-201:31. However, evidence of the parties' business relationship is dispositive on the issue. "While relationship in itself does not bar the status of buyer in ordinary course, such relationship, when coupled with other circumstances, may be sufficient to show that the buyer was not such a buyer. Thus it has been held that the relationship of the parties and the terms of the sale may indicate that a subpurchaser is not a buyer in the ordinary course." 1 Anderson, Uniform Commercial Code 194, supra.

[2] "When the circumstances make it manifest that the buyer did not purchase in good faith, he does not qualify as a buyer in the ordinary course of business. . . . A person is not to be deemed a good faith purchaser where 'it is clear that his sole intention was to obtain possession of the goods by purporting to buy them.' " 1 Anderson, Uniform Commercial Code 201, § 1-201:39.

*Judgment reversed. Pope and Benham, JJ., concur.*

DECIDED JUNE 14, 1988.

*Ronald S. Stevens, Christopher J. McFadden*, for appellant.
*J. Loren Fowler, David Drake*, for appellee.