A89A1018. BORG-WARNER ACCEPTANCE CORPORATION v. BOAT TRADING, INC.
(389 SE2d 555)

CARLEY, Chief Judge.

Appellee-plaintiff Boat Trading, Inc. (Boat Trading) brought suit for conversion against appellant-defendant Borg-Warner Acceptance

Corporation (Borg-Warner). The case was tried before a jury and a verdict for compensatory damages, punitive damages and attorney's fees was returned for Boat Trading. Borg-Warner appeals from the judgment entered by the trial court on the jury's verdict. The facts are set forth in the prior appeals of this case and will be repeated here only insofar as is necessary. See *Dixon v. Borg-Warner Acceptance Corp.*, 186 Ga. App. 843 (368 SE2d 800) (1988); *Credithrift of America v. Borg-Warner Acceptance Corp.*, 187 Ga. App. 534 (370 SE2d 801) (1988).

1. Borg-Warner enumerates as error the denial of its motion for a directed verdict on the issue of Boat Trading's status as a "buyer in the ordinary course of business" under OCGA §§ 11-9-307 (1) and 11-1-201 (9).

Suffice it to say that here, as in *Credithrift of America v. Borg-Warner Acceptance Corp.*, supra, the evidence as to Boat Trading's status as a "buyer in the ordinary course of business" was conflicting and a directed verdict was not authorized. The jury's verdict finding that Boat Trading was a "buyer in the ordinary course of business" is supported by sufficient evidence and the trial court did not err in denying Borg-Warner's motion for a directed verdict.

2. Borg-Warner enumerates as error the trial court's giving of jury instructions on the recoverability of attorney's fees over objection that the evidence would not authorize such a recovery.

The only evidence cited by Boat Trading as authorizing its recovery of attorney's fees is evidence that Borg-Warner was repeatedly told that Boat Trading had paid full value for the boats and that, despite this knowledge, Borg-Warner chose to proceed without making further inquiry and without responding to every communication relating thereto. However, the mere fact that Borg-Warner was apprised that Boat Trading had paid full value for the boats would show only that Borg-Warner was on notice that Boat Trading was the purchaser of the boats. As discussed in Division 1, Boat Trading's status as a purchaser of the boats is *not* the material factor in this case. It is Boat Trading's status as a purchaser *in the ordinary course of business* that is crucial. There is nothing in the record to authorize a finding that Borg-Warner knew or should have known that Boat Trading, although a purchaser of the boats, had unquestionably bought them in good faith and without knowledge that the sale was in violation of Borg-Warner's security interest and that Boat Trading was, as a matter of law, a purchaser in the ordinary course of business. To the contrary, the record shows that Borg-Warner had viable evidence that, under the existing circumstances, Boat Trading was *not* a purchaser in the ordinary course of business because of its intimate connection with Norcross Marine, Inc.

As we held in a prior appeal of this case: "[T]here was evidence

to authorize a finding that Boat Trading was not a buyer in [the] ordinary course [of business]. [Cits.]" *Credithrift of America v. Borg-Warner Acceptance Corp.*, supra at 536. Boat Trading does not suggest what further efforts Borg-Warner could possibly have undertaken, short of litigation before a trior of fact, to determine the legal sufficiency of its evidence that, despite Boat Trading's status as a purchaser, Boat Trading was nevertheless not a purchaser in the ordinary course of business because of its intimate connection with Norcross Marine, Inc. As noted in Division 1, the question of whether Boat Trading was a purchaser in the ordinary course of business was vigorously disputed. Borg-Warner was entitled to litigate that vigorously disputed question without being subjected to the imposition of attorney's fees simply because its efforts were ultimately unsuccessful. There being a bona fide controversy as to Boat Trading's status as a purchaser in the ordinary course of business, an award of attorney's fees is not authorized. "Although this court has held that an award of attorney fees may be made under OCGA § 13-6-11 despite a bona fide controversy between the parties where attorney fees are sought on the ground that the party has acted in bad faith, [cit.], the 'bad faith' alleged here was the same conduct showing stubborn litigiousness. . . . In these circumstances, '(s)uch bad faith damages are not recoverable where there exists a bona fide controversy. (Cit.)' [Cit.]" *General Hosps. of Humana v. Jenkins*, 188 Ga. App. 825, 828-829 (2) (374 SE2d 739) (1988).

There was no evidence authorizing Boat Trading to recover attorney's fees. It follows that the trial court erred in instructing the jury on this element of damages.

3. Borg-Warner enumerates as error the denial of its motion for a directed verdict on the issue of its liability for punitive damages.

Since this action arose prior to July 1, 1987, OCGA § 51-12-5 is applicable. The only evidence cited by Boat Trading as authorizing its recovery of punitive damages under OCGA § 51-12-5 is the evidence that Borg-Warner, having been put on notice of Boat Trading's status as a purchaser, made no further inquiry. As discussed in Division 1, however, this evidence is essentially irrelevant. What is material is that the record shows that Borg-Warner did have viable evidence of Boat Trading's lack of status as a purchaser in the ordinary course of business. There was, therefore, no evidence of any *wilful misconduct* in Borg-Warner's refusal to accede to Boat Trading's demands for the return of the boats. See generally *Allmond v. Walker*, 172 Ga. App. 870, 871 (2) (324 SE2d 812) (1984). The trial court erred in denying Borg-Warner's motion for a directed verdict on the issue of its liability for punitive damages.

4. Borg-Warner enumerates as error the trial court's refusal to give several written requests to charge. We have considered each of

the requests and find that none of them was erroneously refused over the objections which were raised by Borg-Warner in the trial court.

5. Borg-Warner enumerates the general grounds as to its third-party claim. Our review of the record shows, however, that the evidence did not demand a verdict in favor of Borg-Warner on its third-party claim and the trial court did not err in entering judgment on the jury's verdict on that claim.

*Judgment affirmed with direction that punitive damages and attorney's fees be stricken. Deen, P. J., Banke, P. J., Birdsong, Sognier and Benham, JJ., concur. McMurray, P. J., Pope and Beasley, JJ., concur in part and dissent in part.*

BEASLEY, Judge, concurring in part and dissenting in part.

1. I concur in the holding that Borg-Warner was not entitled to a directed verdict.

2. The submission to the jury of the issue of punitive damages was appropriate. Borg-Warner lost its motion for directed verdict on this issue, and it excepted to charges on punitive damages having been given over objection. The charges themselves were full and fair and there is no claim that they were not accurate statements of the law.

The jury awarded $40,000 in this regard, and its verdict is to be given the benefit of every presumption and inference arising therefrom. *American Appraisal Co. v. Whitley Constr. Co.*, 126 Ga. App. 398, 399 (190 SE2d 838) (1972).

Since this action arose prior to July 1, 1987, OCGA § 51-12-5 applies. " 'A jury may award additional damages in a tort action where there are "aggravating circumstances, either in the act or the intention." [OCGA § 51-12-5] [Cit.] "[T]o authorize the imposition of exemplary damages, or punitive damages as they are commonly called, . . . there must be evidence of wilful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences." ' [Cit.]" *Melton v. LaCalamito*, 158 Ga. App. 820, 825 (2b) (282 SE2d 393) (1981). Conversion will support these damages if done wilfully or in conscious disregard of the consequences. *Investment Securities Corp. v. Cole*, 57 Ga. App. 97, 102 (4) (194 SE 411) (1937), aff'd 186 Ga. 809.

Boat Trading's cause of action was conversion by way of wrongful repossession of the five boats. There was evidence of a total lack of concern on the part of Borg-Warner over Boat Trading's claim of ownership and a complete unwillingness to investigate it despite Boat Trading's notices and documents. See *Mr. Transmission v. Thompson*, 173 Ga. App. 773, 775 (2) (328 SE2d 397) (1985). The verdict is not to be disturbed "unless it is insupportable as a matter of law," *Morgan v. Hawkins*, 155 Ga. App. 836, 837 (1) (273 SE2d 221) (1980),

which is not the case.

3. The jury's consideration of an award of litigation expenses as compensatory damages under OCGA § 13-6-11 should also be affirmed. The majority concludes that there was no evidence of conduct on Borg-Warner's part which would support them and therefore the jury should not have been charged on this issue. The court gave the essentials of OCGA § 13-6-11, and the jury awarded $25,000.

Even if there developed a bona fide controversy so as to justify resort to a court for its final resolution, attorney fees are recoverable when the party has acted in bad faith in its dealings with the claimant. *Jackson v. Brinegar, Inc.*, 165 Ga. App. 432, 436 (301 SE2d 493) (1983); *Formica Corp. v. Rouse*, 176 Ga. App. 548, 549 (3) (336 SE2d 383) (1985) (physical precedent); *Georgia-Carolina Brick &c. v. Brown*, 153 Ga. App. 747, 749 (2) (266 SE2d 531) (1980). Here there was such, in connection with the original repossession and the additional refusal to return the boats to Boat Trading.

The evidence was that, when Boat Trading purchased the boats from Lanier Harbor, no mention was made of Borg-Warner's financing.

After Borg-Warner decided to seize Norcross Marine's inventory, Buddin, one of its representatives, told Jordan of Boat Trading on August 28 that Borg-Warner intended to seize Boat Trading's boats even though Borg-Warner knew Boat Trading had paid for them and that Norcross Marine operated out of Lanier Harbor and sold boats there.

The boats were seized over the Labor Day weekend. Jordan provided Borg-Warner's Harberson with copies of Boat Trading's ownership and financing documents.

Before these five boats were returned to the out-of-state manufacturer under Borg-Warner's buy-back agreement, Jordan had Boat Trading's attorney contact Borg-Warner's attorney and advise him of Boat Trading's situation. Further, on September 11, Boat Trading sent its telegram demanding return of the boats; no response was received.

Before the boats were seized, Lackey, of Credithrift, Boat Trading's finance company, also notified Harberson of its interest in the boats. He was told that Borg-Warner would check on this and call him back, although no one ever did.

Credithrift's attorney also contacted Borg-Warner's attorney by letters of September 25 and November 8 concerning the matter. After the last letter, Borg-Warner's attorney advised Credithrift's attorney to go ahead and sue, "I need the money."

There was sufficient evidence of bad faith to merit the jury's consideration of attorney fees. *Jackson,* supra; *Formica Corp.,* supra; *Georgia-Carolina Brick &c.,* supra.

Therefore, I respectfully dissent from Divisions 2 and 3.

I am authorized to state that Presiding Judge McMurray and Judge Pope join in this opinion.

DECIDED DECEMBER 5, 1989 —
REHEARING DENIED DECEMBER 20, 1989 —

*Gurley & Fowler, James B. Gurley, Terry R. Drugan*, for appellant.

*Donald W. Gettle, Patricia L. Gordon, Linda W. Gettle*, for appellee.