A99A1182. LAMB v. STATE FARM MUTUAL AUTO INSURANCE COMPANIES.
(522 SE2d 573)

MILLER, Judge.

Matthew K. Lamb sued State Farm Mutual Auto Insurance Companies ("State Farm") for allegedly seizing and converting his Honda CRX which had been towed from the scene of an accident involving State Farm's insured. After the trial court directed a defense verdict on Lamb's claims for punitive damages, attorney fees, and expenses of litigation, Lamb voluntarily dismissed his case. Enumerating two errors, Lamb appeals the verdict directed on these claims.

On March 9, 1996, Lamb was injured and his car sustained

severe damage in a collision with Sally Soggs, State Farm's insured.[1] A State Farm appraiser deemed Lamb's 1987 Honda CRX, which had in excess of 177,000 miles, to be a total loss. While settlement negotiations were pending, State Farm arranged for Lamb's Honda to be towed to Atlanta. Lamb then brought the underlying action for conversion.

State Farm assigned claims representative Jill Heatherly to handle Lamb's property damage claim. Heatherly testified that she had three separate telephone conversations with Lamb. During the initial discussion on March 11, Lamb told her that he wanted his car back "if it's fixable." Lamb admitted, however, that after he examined his car a few days after the accident, he believed that it was totaled.[2] Heatherly testified that on March 15, Lamb gave her permission to have the Honda moved from Chadwick's Wrecker Service ("Chad's"). According to Heatherly, with Lamb's consent, she arranged for Sadisco, a secured salvage yard in Atlanta, to take the Honda to stop the accrual of daily storage charges at Chad's. Heatherly testified that on the morning of March 18, Lamb agreed to accept State Farm's offer as to the fair market value of the vehicle and Lamb indicated that he would come to her office with his car title to conclude the settlement. Heatherly made a log entry, "[c]laimant coming in for total loss settlement." But Lamb never came, and she never spoke with him again. Later that same day, State Farm received a letter of representation from Lamb's attorney. According to Heatherly, she informed Lamb's attorney on March 21 that the car had been moved.

Three days after the collision, Lamb went to Chad's to retrieve his personal belongings and to examine the Honda. While at Chad's, Lamb inquired about obtaining the rims and tires off the Honda. Lamb was told that if he found suitable replacements, he could have them. About a month and a half later, when Lamb contacted Chad's about the tires and rims, he learned that the Honda had been removed. In July, Lamb's counsel advised State Farm that Lamb would accept $2,300 for the vehicle plus his rims and tires. However, Lamb did not seek the return of the vehicle itself until September 27, when he lodged a written demand. In this letter, Lamb demanded that State Farm bring his Honda back from Atlanta to Columbus by October 10. In response, State Farm agreed to the car's return provided that Lamb would pay $193 to reimburse certain expenses. State Farm also told Lamb that either he or someone on his behalf could go to Atlanta to retrieve the tires and rims from Sadisco's facil-

---

[1] Lamb brought a separate lawsuit against Soggs for his alleged personal injuries and the property damage to his vehicle.

[2] This vehicle sustained severe front end damage, a bent steering wheel, as well as a broken windshield and dashboard.

ity. Lamb did neither, instead filing the underlying action shortly after State Farm did not return his car.

In March 1997, to halt the continuing accrual of storage charges at Sadisco, State Farm arranged for the return of the Honda to the driveway of Lamb's home. Up to that point, Sadisco had billed State Farm more than $600 in storage and towing charges for a vehicle with an estimated salvage value of $500.[3] As of the time of trial, Lamb admitted that the Honda was still sitting in his backyard with its rims and tires in place.

1. Lamb contends that the trial court erred in directing a verdict on the issue of attorney fees and expenses of litigation. He claims that the court overlooked the fact that he sought these damages on two separate grounds: (1) for the initial conversion of his vehicle in March and (2) for State Farm's refusal to unconditionally return his car after his demand in September.

Lamb sought damages on the grounds that State Farm had been stubbornly litigious and caused him unnecessary trouble and expense within the meaning of OCGA § 13-6-11; however, Lamb did not seek damages on the basis of bad faith. Where bad faith is not at issue and the only asserted basis is either stubborn litigiousness or causing unnecessary trouble and expense, if a bona fide controversy is shown to exist, damages under OCGA § 13-6-11 cannot be awarded. *Fuel South v. Metz*, 217 Ga. App. 731, 732 (1) (458 SE2d 904) (1995); *Allmond v. Walker*, 172 Ga. App. 870, 871 (2) (324 SE2d 812) (1984); see *Latham v. Faulk*, 265 Ga. 107, 108 (2) (454 SE2d 136) (1995).

Here, without question, there was a bona fide controversy between these parties. In fact, most of the lawsuit hinges on whether Lamb did, in fact, give permission to State Farm's adjuster to have his car removed from Chad's. Heatherly testified that Lamb gave his consent; Lamb testified that he did not do so. Also at issue was whether State Farm had a right to refuse to return Lamb's vehicle unless Lamb paid certain charges. Since the resolution of genuine disputed factual issues was essential, State Farm had a right to litigate these issues without being penalized under OCGA § 13-6-11. *Metz*, 217 Ga. App. at 733 (1). On retrial, should the jury find that Lamb provided his consent, no action for conversion would lie as a matter of law because an essential element of that tort, unauthorized appropriation of personal property, would be absent. *Kornegay v. Thompson*, 157 Ga. App. 558, 559-560 (2) (278 SE2d 140) (1981). State Farm's refusal to unconditionally return the vehicle after Lamb demanded it back is controlled by *Connors v. Omni Ins. Co.*, 195 Ga. App. 607 (1) (394 SE2d 402) (1990) (demand and wrongful refusal are

---

[3] Lamb disputed that value and claimed the car was worth between $800 and $1,200.

prerequisites to a trover action).

2. Lamb contends that the trial court erred in granting a directed verdict on the issue of punitive damages.

OCGA § 51-12-5.1 (b) requires that a plaintiff present "clear and convincing" evidence of the defendant's egregious conduct in order to warrant an award of punitive damages. Absent wilful misconduct, malice, fraud, wantonness, or oppression, there can be no recovery of punitive damages. *Stolle Corp. v. McMahon*, 195 Ga. App. 270, 273 (5) (393 SE2d 52) (1990). Where there is no evidence from which a jury could conclude that a defendant's conduct rose to the level necessary to impose liability for punitive damages, the trial court may properly direct a verdict. Id. Here, because Lamb failed to offer any evidence to prove egregious misconduct on the part of State Farm, a directed verdict was appropriate. See *Borg-Warner Acceptance Corp. v. Boat Trading*, 194 Ga. App. 63, 65 (3) (389 SE2d 555) (1989).

*Judgment affirmed. Smith and Eldridge, JJ., concur.*

DECIDED SEPTEMBER 16, 1999 —
RECONSIDERATION DENIED OCTOBER 15, 1999 —

*Peter G. Williams*, for appellant.
*Tisinger, Tisinger, Vance & Greer, Douglas C. Vassy*, for appellee.