## 56693. MOLLY PITCHER CANNING COMPANY v. CENTRAL OF GEORGIA RAILWAY COMPANY et al.
## 56694. CENTRAL OF GEORGIA RAILWAY COMPANY v. MOLLY PITCHER CANNING COMPANY.

BIRDSONG, Judge.

Molly Pitcher Canning Co. ("Molly Pitcher") brought suit against Southern Railway Co. ("Southern") and Central of Georgia Railway Co. ("Central") seeking the recovery of damages resulting from a collision between Central's train and Molly Pitcher's plant and equipment. At the close of the plaintiff's evidence, the trial court directed a verdict for Southern. From a favorable jury verdict and the entry of judgment thereon, Molly Pitcher appeals. In a cross appeal, Central appeals from the denial of its motions for directed verdict and judgment nov. *Held:*

1. After a jury's verdict is approved by the trial court, ". . .the evidence must be construed so as to uphold the verdict even where there are discrepancies. [Cits.]" *Smith v. Hornbuckle,* 140 Ga. App. 871, 876 (232 SE2d 149). Construing the evidence in accordance with this rule, the record and transcript reveal that Molly Pitcher

was a corporation engaged in the business of processing and canning freestone peaches and tomatoes, and conducted these operations in a plant adjacent to three railroad spurs owned by Central. These spur tracks were connected by a switch to a single lead track which in turn connected with Central's main line between Fort Valley and Albany, Georgia. On July 28, 1969, Molly Pitcher and Central entered into a licensing agreement (hereafter referred to as "licensing agreement") which granted Molly Pitcher the right to occupy and use a parcel of Central's right of way together with the right to construct and maintain upon said premises a portion of a building. Thereafter, on April 13, 1970, Molly Pitcher and Central entered into a lease agreement (hereafter referred to as "lease agreement") pursuant to which Central leased to Molly Pitcher a portion of the spur track adjacent to Molly Pitcher's plant, for the purpose of storing railroad cars. Both the licensing agreement and the lease agreement contained "hold harmless" or indemnification provisions which purported to indemnify Central against certain damages arising from the use of the spur tracks. The licensing agreement provided:

"Since the use by Licensee of property of Company hereunder may create fire or other risks which would not accrue except for such use, and Company would not permit such use except upon the condition that it shall be protected against such risks, Licensee covenants hereby (if a corporation, with warranty of its authority so to do) to hold Company or any other corporation controlling, controlled by or under common control with Company harmless from death, personal injury or property damage accruing or sustained from any act, negligence or default of Licensee, or agents or employees of Licensee, in or in connection with the exercise of the privileges hereby granted, or which may be attributable thereto, or to the presence of any property of Licensee upon said premises of Company including specifically damage to such property from railroad operations, and whether or not negligence of Company or any other corporation controlling, controlled by or under common control with Company, its agents or employees, may have contributed to such injury or damage, except that Licensee shall not be held

responsible for any loss of life, personal injury or damage to cars or property of Company, accruing from Company's negligence, without fault of Licensee, its agents or employees."

The lease agreement provided:

"Railroad shall have no liability for and Industry agrees to indemnify Railroad against the consequences of any loss of or damage to said cars and their contents placed on said leased track by or for account of Industry, or any loss of life, personal injury or property loss or damages suffered by reason of any act, negligence or default of Industry, its agents or employees, in or about or in connection with the use of said leased track and premises, or which may be attributable thereto, or to the presence of said cars or their contents on said leased track, except loss, injury or damage arising from the sole negligence of Railroad, its servants or employees."

The only damages sought by Molly Pitcher are those resulting from the destruction of its property, and the subsequent loss of business profits. The parties have stipulated that the collision which precipitated this litigation did not occur on property which was the subject of either the lease agreement or the license agreement.

2. Central's cross appeal is predicated solely on the effect of the indemnity provisions quoted above. Central argues that these provisions required Molly Pitcher to indemnify Central against all damages sought by Molly Pitcher in its suit against Central, or, alternatively stated, that the indemnification provisions constituted a complete defense to Molly Pitcher's claims.

(a) Preliminarily, we note the stipulation by the parties that the collision which is the subject matter of this litigation did not occur on property covered by either of the agreements in which the indemnity provisions are contained. In this regard, we are cognizant of the holding of the Supreme Court of Georgia in *Southern R. Co. v. Ins. Co. of N. A.*, 228 Ga. 23 (183 SE2d 912), where the court concluded that an indemnification covenant similar to those herein at issue would encompass damages occurring in excess of 1,600 feet from the premises specifically described in the indemnification agreement, so long as the damages in fact accrued as a result of or in connection

with the use or operation of the described premises. See *Southern R. Co. v. Brunswick Pulp &c. Co.*, 376 FSupp. 96, 99 (SD Ga. 1974); *Watson v. Southern R. Co.*, 420 FSupp. 483 (DC SC 1975).

Of determinative import is the scope of the indemnity provisions, which, manifested in the form of written contracts, is a question of law for the court. *Interstate Life &c. Co. v. Brown,* 141 Ga. App. 195 (233 SE2d 44). The rule is well established that contracts of indemnity "... are construed strictly and absent plain, clear and unequivocal language will not be interpreted to indemnify against acts attributable to the indemnitee's own negligence. [Cits.]" *Binswanger Glass Co. v. Beers Const. Co.,* 141 Ga. App. 715, 717 (234 SE2d 363).

Examining the indemnification covenants in light of these rules, the *lease* agreement plainly exempts Molly Pitcher from liability for indemnification for damages such as those here at issue arising *solely* as a result of Central's negligence. The *licensing* agreement is somewhat less clear in its meaning, but the relevant portions provide that Molly Pitcher shall indemnify Central against damages sustained as a result of "...any act, negligence or default *of Licensee* [Molly Pitcher] ... and whether or not negligence of Company [Central]... may have *contributed* to such damage. . ." (Emphasis supplied.) A careful reading of the indemnification provisions contained in the licensing agreement thus reveals the absence of the express and unequivocal language that is a condition precedent to the indemnification of an indemnitee against his sole negligence. *Binswanger &c. Co. v. Beers Const. Co.,* supra; *Scarboro Enterprises v. Hirsh,* 119 Ga. App. 866, 869 (169 SE2d 182). We conclude therefore that the indemnification provisions upon which Southern relies as a defense to Molly Pitcher's suit do ". . .not preclude the plaintiff [Molly Pitcher] from seeking compensation for a property loss of the plaintiff caused *solely* by the negligence of the defendant [Central]." (Emphasis supplied.) *Bohannon v. Southern R. Co.,* 97 Ga. App. 849 (104 SE2d 603). See *Seaboard C. L. R. Co. v. Union Camp Corp.,* 145 Ga. App. 417, 418 (243 SE2d 631). It follows that the trial court was correct in charging the jury as

follows: ". . .if you find from the evidence that the *sole proximate cause* of the plaintiff's damage, if any, was defendant railroad's negligence, if any, then in such event it would be your duty to return a verdict in favor of the plaintiff. . ." (Emphasis supplied.)

(b) Questions of negligence and proximate cause are for the jury. *Holcomb v. Ideal Concrete Products,* 140 Ga. App. 857 (232 SE2d 272). The evidence authorized the jury to find that Central was on notice of the fact that Molly Pitcher's equipment was situated in such proximity to the tank track (the track immediately adjacent to Molly Pitcher's plant) that said track was impassable and the use thereof would inevitably result in a collision; that Central had stated to Molly Pitcher that it would no longer use the tank track; that Central negligently failed to examine the railroad switching device which should have diverted the railroad cars down the middle or spur track rather than the tank track; and that Central negligently backed a "cut" of railroad cars onto the impassable tank track. The jury was thus authorized to conclude that Central's negligence was the sole proximate cause of the damages sustained by Molly Pitcher as a result of the collision between Central's train and Molly Pitcher's plant and equipment and therefore that Molly Pitcher was not barred from recovery against Central by virtue of the indemnification covenants. Accordingly, the trial court did not err in overruling Central's motions for directed verdict and judgment nov, and Central's enumerations of error are without merit.

3. Molly Pitcher's enumerated errors 3, 4, 5, and 6 relate to the trial court's refusal to admit into evidence a letter, certain pleadings, and other evidence to the effect that, immediately following the collision, Molly Pitcher notified Central of the incident and demanded restitution for the cost of the damaged equipment and building. Pursuant to Code Ann. § 81A-112 (8), the trial court granted Central's motion to strike such portions of Molly Pitcher's pleadings as related to Molly Pitcher's notice and demand.

Molly Pitcher argues that the above-described pleadings and evidence were relevant to illustrate Molly Pitcher's effort to mitigate damages, within the meaning

of Code Ann. § 105-2014. However, the trial court did not charge the jury as to mitigation of damages; consequently, the trial court's refusal to admit this evidence for the purpose of showing Molly Pitcher's effort to mitigate damages could not have been harmful. Furthermore, Molly Pitcher cites no authority, and we are aware of none, in support of the proposition that a plaintiff's demand for restitution from an alleged tortfeasor constitutes a legally sufficient attempt to mitigate damages within the meaning of Code Ann § 105-2014. The trial court did not err in refusing to admit the pleadings and evidence pertaining to Molly Pitcher's notice and demand to Central, and enumerated errors 3, 4, 5, and 6 are without merit.

4. Enumerated errors 7, 8, 9, 10, 11, 12, 13, and 14, relate to the exclusion of evidence regarding the alleged loss of profits to the existing tomato and freestone peach canning operation and further, the loss of profits to an incipient venture, a "cling" peach canning operation. In addition, Molly Pitcher argues that the trial court erroneously excluded evidence purporting to establish, as a measure of damages, "the destruction of a business as a going concern."

The general rule as to the recoverability of lost profits as an item of damages is that the expected profits of a commercial venture "are not recoverable as they are too speculative, remote, and uncertain. *Ga. Grain Growers Assn. Inc. v. Craven,* 95 Ga. App. 741, 747 (98 SE2d 633)." *Appling Motors v. Todd,* 143 Ga. App. 644, 645 (239 SE2d 537). See Code Ann. § 105-2008; *Tri-State Systems v. Village Outlet Stores,* 135 Ga. App. 81 (217 SE2d 399); *Carr v. Jacuzzi Bros.,* 133 Ga. App. 70 (210 SE2d 16); *Ga. Grain Growers Assn. v. Craven,* supra; *Everett v. Clegg,* 94 Ga. App. 725 (96 SE2d 382), revd. on other grounds, 213 Ga. 168 (97 SE2d 689); *Norris v. Pig 'N Whistle Sandwich Shop,* 79 Ga. App. 369 (53 SE2d 718). The rationale underlying this rule was elucidated in *Cooper v. Nat. Fertilizer Co.,* 132 Ga. 529, 535 (64 SE 650): "The profits of a commercial business are dependent on so many hazards and chances, that unless the anticipated profits are capable of ascertainment, and the loss of them traceable directly to the defendant's wrongful act, they are too

speculative to afford a basis for the computation of damages." Succinctly stated, "[a]n allowance for damages cannot be based on guesswork. [Cits.]" *Tendrift Realty Co. v. Hayes,* 140 Ga. App. 896 (232 SE2d 169).

As with most rules, however, there is an exception to that stated above. This court has held: "The rule against the recovery of vague, speculative, or uncertain damages relates more especially to the uncertainty as to cause, rather than uncertainty as to the measure or extent of the damages. Mere difficulty in fixing their exact amount, where proximately flowing from the alleged injury, does not constitute a legal obstacle in the way of their allowance, when the amount of the recovery comes within that authorized with reasonable certainty by the legal evidence submitted." *Ayers v. John B. Daniel Co.,* 35 Ga. App. 511, 512 (133 SE 878). See *Summerfield v. DeCinque,* 143 Ga. App. 351 (238 SE2d 712); *Booker v. J. T. Bickers Realty Co.,* 127 Ga. App. 614 (194 SE2d 490); *Atlanta Gas Light Co. v. Newman,* 88 Ga. App. 252 (76 SE2d 536). Succinctly stated, the exception to the rule as to recovery of anticipated profits holds that "[a]lthough recovery for lost profits is not necessarily precluded in a tort action, [cit.], such loss must be capable of reasonably accurate computation." Synthetic Ind. v. Whitlock, 439 FSupp. 1297, 1301 (N.D. Ga. 1977). See Jacksonville Blow Pipe Co. v. Trammell Hardwood Flooring Co., 170 FSupp. 537 (N.D. Ga. 1958), affd., 264 F2d 717 (5th Cir. 1959).

The rule applicable to this case was stated in Jacksonville Blow Pipe Co. v. Trammell Hardwood Flooring Co., supra, p. 719 (1): "[W]here . . . *in an established business with clearly defined business experience as to profit and loss* . . . [anticipated profits] may, if clearly and fairly shown, be considered in estimating the extent of the injury done." (Emphasis supplied.) The proposed cling peach canning operation was, at the time of the collision, in its incipiency, by definition a newly-begun enterprise. In the circumstances presented here, there plainly exists no basis upon which a reasonably accurate computation of lost profits might be made, as required by the above-cited cases. See Eastern Federal Corp. v. Avco-Embassy Pictures, 326 FSupp. 1280 (N.D. Ga. 1970), modified 331 FSupp. 1253 (N.D. Ga.

1971); *The Hip Pocket v. Levi Strauss & Co.,* 144 Ga. App. 792 (242 SE2d 305).

As to existing canning operations, the record plainly established, without contradiction, that, in the five years preceding the collision, Molly Pitcher's losses had exceeded profits. Additional evidence revealed serious capital shortages and depleted borrowing strength in the face of administrative action by the State Water Quality Control Board requiring immediately compliance with applicable pollution control regulations, at an estimated cost in excess of $500,000. Shortly thereafter, an unknown agency threw the switch from Central's middle track diverting it to the tank track resulting in the collision which precipitated this litigation. Under the authorities cited above, the evidence presented was insufficient to authorize a reasonably accurate computation of anticipated profits from the existing operation; on the contrary, there appeared, from the evidence, the greater probability of continued and aggravated losses. As stated in *Radio of Ga. v. Little,* 129 Ga. App. 530, 535 (199 SE2d 835): "If the past performance of the plaintiff here be used as the criterion, he proved no loss of profits because he was operating at a loss."

A diligent examination of Georgia law reveals no authority for the recovery of damages resulting from "The destruction of a business as a going concern." The authority most heavily stressed by Molly Pitcher, Jacksonville Blow Pipe Co. v. Trammell Hardwood Flooring Co., supra, is inapposite and stands only for the proposition propounded above, i.e., that anticipated profits may be recovered where based upon an established history of profit and loss. The Blow Pipe case is otherwise devoid of reference to the measure of damages sought by Molly Pitcher. Other cases relied upon by Molly Pitcher as authority for the recovery of damages resulting from "the destruction of a business as a going concern," e.g., *Brunswick &c. R. Co. v. Hardey & Co.,* 112 Ga. 604 (37 SE 888); *Sturgis & Berry v. Frost,* 56 Ga. 188; and *The Kroger Co. v. Perpall,* 105 Ga. App. 682 (125 SE2d 511) relate only to damages in the form of lost profits resulting from the *interruption* of business, and do not reach the issue of total

destruction of the business "as a going concern." On the contrary, *The Kroger Co. v. Perpall,* supra, states that "a property loss . . .would only entitle the plaintiff to damages for that *reasonable period of time* which it would take him to make other arrangements for carrying on his profession. . ." (Emphasis supplied.) Id., pp. 686, 687. Clearly, *The Kroger Co.* suggests a limitation on the amount of recovery, even as to non-speculative profits, for damage or destruction to a business as such.

In *City of Dublin v. Ogburn,* 142 Ga. 840 (4a) (83 SE 939), it was stated: ". . .damage to the business of the owner by reason of being without a building for two months after the fire, was too remote to be recovered. [Cits.]" Similarly, in *Tovell v. Legum,* 207 Ga. 193 (60 SE2d 339), a counterclaim alleged that the plaintiffs "conspired together to wreck" the defendants' business. The court held, on facts similar to those obtaining here, that: "The damages claimed were in the nature of anticipated profits which the defendants claimed would have been realized if they had been allowed to go forward with the business. . . This claim for damages by reason of loss of anticipated profits was too remote, conjectural, and speculative to afford the basis for a cause of action. See Code, § 105-2008; [and cits.]" Id., p. 197. It is thus apparent from a careful reading of *The Kroger Co.,* supra, and *Tovell,* supra, that there is no authority for the recovery of damages for the "destruction of a business as a going concern." Rather the applicable rules are those which are derived from Code Ann. § 105-2008 and authorize recovery of only such damages as are susceptible of reasonably accurate computation.

Based on the foregoing, the trial court did not err in excluding evidence of anticipated profits, in the absence of an evidentiary basis upon which an accurate computation of such profits could be made. Enumerated errors 7-14 are without merit.

5. Molly Pitcher contends, in enumerated error no. 21, that the trial court erred in directing a verdict in favor of Southern. The evidence showed that Central, at the time of the collision, was a wholly-owned subsidiary of Southern and that certain employees of Central received wages drawn on pay checks bearing the following:

"Southern Railway System
Southern Railway Company
Agent for Central of Georgia Railroad Company"

"No hard and fast rule can be laid down, but it seems clear that so long as the law authorizes the formation of subservient corporations, the law would defeat its own purpose by disregarding its own creature merely because a parent corporation, or other sole owner, controls the subsidiary, . . .. and uses it and controls it to promote his or its ends. This principle has been stated many times. [Cits.]" *Condenser Service &c. Co. v. Brunswick Port Authority,* 87 Ga. App. 469, 474 (74 SE2d 398). See Trans-Amazonica Iquitos, S. A. v. Georgia Steamship Co., 335 FSupp. 935 (S.D. Ga. 1971); Page v. Haverty, 129 F2d 512 (5th Cir. 1942). Furthermore, ". . .the separate identity of a subservient corporation is not destroyed *merely* by the fact that it is used by the parent for the parent's ends, [cit], or even by the fact that they have the same officers and offices." *Trans-American Communications v. Nolle,* 134 Ga. App. 457, 459 (214 SE2d 717).

The evidence presented at trial totally failed to authorize the jury to disregard Central's corporate entity and thereby impose liability upon Southern for the acts of Central. Therefore, the trial court did not err in directing a verdict in favor of Southern, or in denying Molly Pitcher's amended motion for new trial based on this ground. Enumeration of error no. 21 is without merit.

6. The trial court limited the jury, in computing damages, to the consideration of damage to certain equipment and the wall of Molly Pitcher's plant; the jury's determination as to these damages was within the range of evidence and was not so inadequate as to justify the inference of gross mistake or undue bias. See *Fargason v. Pervis,* 138 Ga. App. 686 (227 SE2d 464); *Childs v. Logan Motor Co.,* 103 Ga. App. 633, 639 (120 SE2d 138).

7. The evidence did not authorize the computation of anticipated or lost profits. As indicated in Division 4 of this opinion, the law does not provide for the recovery of damages resulting from "the destruction of a business as a going concern." The trial court therefore properly excluded from the jury's consideration Molly Pitcher's

claim for these elements of damage. *Smith v. A. A. Wood & Son Co.,* 103 Ga. App. 802 (120 SE2d 800). See *Tovell v. Legum,* supra; *LDH Properties v. Morgan Guaranty Trust Co. of N. Y.,* 145 Ga. App. 132 (243 SE2d 278).

8. The measure of damages to personal property is the market value of the property before and after the damage to such property. *Harper Warehouse v. Henry Chanin Corp.,* 102 Ga. App. 489 (116 SE2d 641); *Douglas v. Prescott,* 31 Ga. App. 684 (121 SE 689). See *Driggers v. Atlanta Gas Light Co.,* 97 Ga. App. 502 (103 SE2d 586). Molly Pitcher introduced into evidence "Plaintiff's Exhibit 31," which lists a variety of inventory items, together with their value before and after the collision. This evidence, together with testimony at trial, was sufficient to authorize the jury to consider their reduction in value and award damages accordingly. The determination of whether the reduction in value, if any, of Molly Pitcher's personalty proximately resulted from the collision is for the jury, upon proper instruction. *Holcomb v. Ideal Concrete Products,* supra. *Smith v. Hardy,* 144 Ga. App. 168 (240 SE2d 714). Therefore the trial court's refusal to charge the jury accordingly constituted reversible error. *Harper Warehouse v. Henry Chanin Corp.,* supra.

9. For the reasons set forth above, the trial court erred in overruling Molly Pitcher's motion for new trial. Other enumerations of error need not now be considered.

*Judgment reversed on the main appeal and affirmed on the cross appeal. Bell, C. J., and Shulman, J., concur.*

ARGUED OCTOBER 10, 1978 — DECIDED JANUARY 15, 1979 — REHEARING DENIED FEBRUARY 9, 1979 — ▮▮▮▮▮▮

*Hicks, Maloof & Campbell, Robert E. Hicks, Charles E. Campbell, Charles R. Adams, Jr.,* for appellant.

*Greene, Buckley, DeRieux & Jones, Burt DeRieux, Gregory J. Digel, Robert E. Lanyon,* for appellees.