A93A0882. DAVID ENTERPRISES, INC. et al. v. KINGSTON ATLANTA PARTNERS.

(438 SE2d 90)

Pope, Chief Judge.

Tenant/defendant David Enterprises, Inc. operates a restaurant in an office building owned by landlord/plaintiff Kingston Atlanta Partners. The premises are leased pursuant to a written lease entered into between the tenant and the landlord's predecessor in interest. The landlord filed an affidavit for distress warrant alleging the tenant owed rent. The tenant answered and denied the landlord's claim and raised a counterclaim for damages for breach of certain terms of the lease. A bench trial was conducted and the trial court entered judgment in favor of the landlord in the amount of $8,000 for rent due, $5,000 accrued interest and $7,000 attorney fees. Judgment was entered against the tenant on its counterclaim. Tenant appeals.

1. The landlord's claim is based on the allegation that in addition to the base rent, the tenant owes additional rent for consumption of electricity. Section 8.04 of the lease states: "Landlord, at its sole cost and expense, shall furnish and install a submeter in the Premises to measure Tenant's consumption of electric energy (not including the heating and air conditioning that Landlord furnishes). The first 10,000 kilowatt hours per month of Tenant's consumption of electric energy in the Premises shall be at no cost to Tenant. Tenant agrees to pay Landlord, as additional rent within ten days after being billed therefor, for all electric usage in the Premises in excess of 10,000 kilowatt hours per month, at rates equal to Landlord's actual cost per kilowatt hour for such excess usage." That phrase which was placed in parentheses was a typewritten addition to the pre-printed lease terms. The landlord's claims for rent arise out of the additional rent it claims the tenant was obligated to pay pursuant to Section 8.04 of the lease.

The tenant argues that Section 8.04 must be construed in conjunction with Section 8.01 of the lease, the pre-printed portion of which states: "Landlord shall furnish electric energy to the Premises for lighting and for equipment requiring no unusual or extraordinary demands on, or usage of, the existing Building system." To this section a typed footnote was added stating: "Landlord agrees to furnish necessary electric (Section 8.04 notwithstanding) for Tenant's initial requirements as per the attached exhibit B." No exhibit B was attached to the lease but the uncontroverted testimony at trial established that the intent of the footnote was to encompass the specific electric requirements necessary to operate tenant's restaurant equipment. The tenant argues that the typewritten addition to Section 8.01 must be construed as overriding the electrical billing provisions of Section 8.04. We agree.

The trial court's order of judgment addresses only the billing provisions of Section 8.04 and does not address Section 8.01. The comments of the trial judge at the hearing illustrate that the judge did not attempt to construe the phrase "Section 8.04 notwithstanding," which was added to Section 8.01 and focused, instead, on construing the meaning of the word "furnish." The word "furnish" appears several times in the five subsections of Section 8 of the lease, titled "Electric Energy and Water." We agree with the conclusion of the trial court at the trial of the case that in all other instances but one, the only reasonable meaning of the term is "to supply the source of [electricity, water, etc.]," and does not mean the landlord will necessarily *pay* for the utility in question. To construe the phrase in the pre-printed portion of Section 8.01 "Landlord will furnish electric energy" as meaning that the landlord agrees to pay for electric energy would make the payment provisions of Section 8.04 meaningless.

To the pre-printed language of Section 8.01, however, was added the typewritten provision whereby landlord agreed to "furnish necessary electric (Section 8.04 notwithstanding). . . ." If this covenant had been made "notwithstanding Section 8.02" then we would agree with the trial court that the typewritten addition was intended merely to indicate landlord would "supply" the electric source for the special restaurant equipment necessary for the tenant's operations. This is because immediately following the pre-printed provisions of Section 8.01 stipulating that the landlord will provide an electric source only for equipment requiring no unusual or extraordinary demands on the electrical system was Section 8.02, which stipulated that if the tenant had special electrical requirements the tenant could install additional electric supply equipment at its own expense. However, the typewritten addition to Section 8.01 indicated the covenant to "furnish" the necessary electric service for the tenant's equipment was made notwithstanding the provisions of *Section 8.04*. Section 8.04 does not address the issue of which party is required to pay for the installation of additional electric supply equipment but addresses *only* the issue of who is to pay for electric service. Thus, to construe the typewritten addition to Section 8.01 as the trial court construed it makes the phrase "Section 8.04 notwithstanding" meaningless. This would be contrary to the accepted rules of construction of a contract, pursuant to which the written provisions of a contract are entitled to greater consideration than printed provisions. See OCGA § 13-2-2 (7); *Fort Oglethorpe Assoc. II, Ltd. v. Hails Constr. Co.*, 196 Ga. App. 663 (2) (396 SE2d 585) (1990).

Our construction of Section 8.01 requires the term "furnish" in the typewritten addition to that section to mean "pay for." As noted above, the trial court recognized that in one other instance in Section 8 of the lease, the term "furnish" was clearly meant to mean "pay

for." That other instance was also in a typewritten addition to the lease. To Section 8.04 was added a typewritten phrase indicating that despite the billing procedure set forth in that subsection for the tenant's consumption of electricity, the landlord agreed to furnish, meaning "pay for," the heating and air conditioning. Thus, in one other typewritten addition to the contract, the term "furnish" must be interpreted as meaning "pay for." Likewise, we conclude that construing the provisions of Section 8.01 in the only manner that gives it logical meaning, the phrase "furnish necessary electric (Section 8.04 notwithstanding)," which was added to the contract, requires the landlord to "pay for" the tenant's consumption of electrical energy despite the pre-printed provision for billing the tenant for that expense. The trial court erred in awarding judgment to plaintiff landlord on its distress claim for rent due.

2. The trial court did not err, however, in ruling against defendant tenant on its counterclaim. The lease contained a provision wherein the landlord represented that as of the date on which the tenant's lease was signed it had entered into no other lease of space in the building which permitted the lessee to sell certain named food and beverages and also contained a covenant that, upon written notice to the landlord that another lessee was making such sales, the landlord would take such reasonable steps as necessary to prevent the activity, including legal proceedings. The lease also contained a provision wherein the landlord covenanted not to enter into any lease permitting the sale of the named items so long as tenant performed its duties under the lease. The record shows that, in fact, another lease was in effect as of the date on which the tenant's lease was signed which permitted another lessee to sell certain of the named items. The record further shows that the other lessee sold several other food and beverage items which the landlord gave tenant the exclusive right to sell and that in August 1989 the tenant gave the landlord notice in writing of the infringement of his lease; yet the landlord took no steps to correct the situation.

The tenant's counterclaim was based on the allegation that the landlord breached the terms of the lease by failing to perform its promise to protect the tenant's exclusive right to sell the named items. At trial, the tenant presented evidence to support its claim that another lessee was selling some of the items the tenant had been given the exclusive right to sell as well as evidence of the average number of these items which the other lessee sold per day. The tenant then presented evidence concerning the profits it made on the sale of each of these items from which the judge, as the trier of fact, could calculate the tenant's lost profits from these unauthorized sales. Nevertheless, the trial judge refused to grant judgment to defendant on its counterclaim on the ground, inter alia, that the tenant had

failed to present evidence from which the proper measure of damages for its claim could be determined. We agree.

" 'The measure of damages recoverable for a lessor's breach of covenant not to rent other stipulated premises for a competing business is the difference in value between the [tenant's] leasehold with the covenant against competition unbroken and the same leasehold with the covenant broken. The value of said leasehold is not controlled by the stipulated rental therefor, nor the profits which the tenant could have realized from the operation of his business without the adjacent competing business. However, allegations and evidence of loss of profits are material to show the damage sustained by the lessee, in accordance with the rule herein stated. (Cits.) . . . (E)vidence (of loss of profits) is admissible and pleadings in support thereof proper in order that the jury may properly estimate the value of the leasehold estate before and after the covenant is broken. Therefore, a recovery for loss of profits occasioned by a breach of contract where properly pleaded and proved may be indirectly had.' [*Carusos v. Briarcliff, Inc.*, 76 Ga. App. 346, 351-352 (2) (45 SE2d 802) (1947)]." *Gilmore Intl. Travel v. Equitable Life Assur. Soc.*, 183 Ga. App. 116, 117 (1) (358 SE2d 279) (1987). Thus, while lost profits is evidence which may be presented in support of a claim for diminution of the value of the leasehold, and may be an element of the damages, it is not the direct measure of damages in such a claim. In this case, the tenant presented only evidence of lost profits and presented no evidence or argument from which the judge, as finder of fact, could determine the diminution of the leasehold value. "Where a party sues for specific damages he has the burden of showing the amount of loss claimed in such a way that the jury may calculate the amount of loss from the data furnished and will not be placed in a position where an allowance of the loss is based on guesswork." (Citation and punctuation omitted.) *Mathis v. Copeland*, 139 Ga. App. 68, 69 (228 SE2d 23) (1976). Thus, insufficient evidence was presented from which damages could be awarded to the tenant on its counterclaim.

*Judgment affirmed in part and reversed in part. Birdsong, P. J., and Andrews, J., concur.*

DECIDED AUGUST 27, 1993 —
RECONSIDERATION DENIED NOVEMBER 23, 1993.

*Graham G. McMurray*, for appellants.
*Pursley, Howell, Lowery & Meeks, John R. Lowery*, for appellee.