A97A0486. MARKET PLACE SHOPPING CENTER, L.P. v. BASIC BUSINESS ALTERNATIVES, INC.
(489 SE2d 162)

SMITH, Judge.

This is the second appearance of these parties before this Court. In *Market Place Shopping Center v. Basic Business Alternatives,* 213 Ga. App. 722 (445 SE2d 824) (1994), we affirmed the trial court's entry of judgment in favor of Basic Business Alternatives (BBA) based on Market Place's breach of a lease covenant not to rent space to any other competing business. We reversed the award of damages, however, concluding that the trial court applied an incorrect measure of damages. Id. at 723 (3). Following another bench trial, on the issue of damages, the trial court entered judgment in favor of BBA in the amount of $52,754.33. This appeal by Market Place ensued. Although we disagree with Market Place's contention that the trial court did not apply the proper measure of damages, we nevertheless reverse because we conclude that the trial court's award was based on speculative evidence.

1. After BBA concluded presentation of its evidence, Market

Place moved for involuntary dismissal pursuant to OCGA § 9-11-41 (b), arguing that BBA presented evidence only of lost profits as the measure of damages. The trial court denied the motion, and Market Place then submitted its own evidence. Market Place raises the denial of its motion as error.

"The measure of damages recoverable for a lessor's breach of [a] covenant not to rent other stipulated premises for a competing business is the difference in value between the plaintiffs' leasehold with the covenant against competition unbroken and the same leasehold with the covenant broken. The value of said leasehold is not controlled by the stipulated rental therefor, nor the profits which the tenant could have realized from the operation of his business without the adjacent competing business. However, allegations and evidence of loss of profits are material to show the damage sustained by the lessee, in accordance with the rule herein stated. [Cits.]" *Carusos v. Briarcliff, Inc.*, 76 Ga. App. 346, 351-352 (2) (45 SE2d 802) (1947). See also *Market Place Shopping Center*, supra at 723 (3); *David Enterprises, Inc. v. Kingston Atlanta Partners*, 211 Ga. App. 108, 110-111 (2) (438 SE2d 90) (1993). While evidence of lost profits is admissible, *Carusos*, supra at 352, evidence of lost profits *alone* is not sufficient to enable the trier of fact to determine damages. One seeking to recover for breach of a covenant not to rent premises to a competing business "cannot . . . recover for loss of profits and the value of the good-will of his business as such, but evidence as to these may be introduced to throw light on the value of his leasehold estate." Id. Although lost profits may be an element of damages, "it is not the direct measure of damages" of a claim for a covenant such as the one at issue here. *David Enterprises*, supra at 111.

If we relied entirely on evidence submitted by BBA with respect to the value of the leasehold with the covenant unbroken, we might be constrained to agree with Market Place that the trial court should have granted its motion for involuntary dismissal. The only evidence presented by BBA concerning the leasehold value with the covenant unbroken was derived from anticipated lost profits allegedly resulting from Market Place's breach. Such evidence alone was insufficient to permit the trial court to determine the diminution of the leasehold value. See *David Enterprises*, supra at 111.

But BBA's expert did not provide the only testimony concerning the damages suffered by BBA. Market Place's expert, a real estate appraiser, testified concerning damages as well. He estimated the difference in value between BBA's leasehold with the covenant against competition unbroken and the covenant broken to be $4,600. Although this witness also testified that he did *not* arrive at a specific value for BBA's leasehold estate with the covenant unbroken or a value for the lease with the covenant broken, the trial court was

authorized, as trier of fact, to believe portions of his testimony and disbelieve others. *Brunswick Mfg. Co. v. Sizemore*, 183 Ga. App. 482, 484 (359 SE2d 180) (1987). This expert explained his method of determining this measure of the difference in these valuations. He examined comparable properties and appraisal publications to find other similar competitors in the area. He also compared the lease of BBA's competitor to that of BBA. He found the leases to be similar in most respects, including size of leased space, term, type of business, proximity to one another, and commencement date. He found the rents to be different, however, in the amount of "$.50 per square foot per year, triple net." In addition, the competitor's lease did not contain a non-compete covenant. The expert analogized the competitor's lease, without a covenant, to one in which the covenant had been broken. He then reached his $4,600 value by calculating the rental rate per square foot of BBA's business, with a lease containing a restrictive covenant, and subtracting from that value the rental rate per square foot of the competitor's lease. Consequently, proof of lost leasehold value other than anticipated lost profits was submitted, albeit from Market Place's own expert.

The trial court was entitled to rely upon all the evidence presented in reaching its conclusion concerning damages. In a bench trial, when the defendant moves for dismissal of the action after the close of the plaintiff's case upon the ground that the plaintiff has shown no right to relief, "[t]he court as trier of the facts may then determine the facts and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence." OCGA § 9-11-41 (b). The trial court neither granted the motion nor deferred judgment. But given that the statute does not provide for *denial* of such a motion and that the trial court went on to hear evidence from the defendant in this case, we construe the trial court's "denial" of the motion as a deferral of judgment. "[I]n the absence of evidence in the record to the contrary, we must presume the trial court acted correctly. [Cit.]" *Riberglass, Inc. v. ECO Chemical Specialties*, 194 Ga. App. 417, 419 (1) (a) (390 SE2d 616) (1990).

2. Although we do not agree with Market Place that the trial court applied an erroneous measure of damages, we must reverse on another ground. As argued by Market Place, BBA's proof of damages was completely speculative and conjectural and therefore could not provide a proper basis for valuing the leasehold.

In general, lost profits are not recoverable as contract damages because of their speculative, remote, and uncertain nature. *Molly Pitcher Canning Co. v. Central of Ga. R. Co.*, 149 Ga. App. 5, 10 (253 SE2d 392) (1979). See also *Re/Max of Ga. v. Real Estate Group on Peachtree*, 201 Ga. App. 787, 789 (2) (412 SE2d 543) (1991). As with most rules, though, exceptions have been identified. For example, it

appears that the general rule is somewhat modified with respect to recovery of lost profits arising out of the breach of a leasehold covenant such as that here. Although lost profits alone may not be used to establish the value of a leasehold with the covenant unbroken, as discussed in Division 1, such evidence is admissible "to throw light on the value of [a] leasehold estate." *Carusos*, supra at 352. This type of evidence is allowed "in order that the jury may properly estimate the value of the leasehold estate before and after the covenant is broken. Therefore, a recovery for loss of profits occasioned by a breach of contract when properly pleaded and proved may indirectly be had." Id. The speculative nature of lost profits is not necessarily a bar to their indirect recovery.

But the rule that lost profits may be indirectly recoverable in certain circumstances does not eliminate the well-established rule that the trier of fact must be provided with some means of ascertaining the value of those lost profits with some degree of certainty. As recited by this Court in *Molly Pitcher*, supra, anticipated profits may be recovered "when the amount of the recovery comes within that authorized with reasonable certainty by the legal evidence submitted. Succinctly stated, the exception to the rule as to recovery of anticipated profits holds that although recovery for lost profits is not necessarily precluded in a tort action, *such loss must be capable of reasonably accurate computation.*" (Citations and punctuation omitted; emphasis supplied.) Id. at 11. See also *Bass v. West*, 110 Ga. 698, 703-704 (36 SE 244) (1900) (anticipated profits and value of good will not allowable "where these elements are merely speculative and conjectural and can not be ascertained with reasonable certainty"). Stated in another manner, "in an established business with clearly defined business experience as to profit and loss anticipated profits may, if clearly and fairly shown, be considered in estimating the extent of the injury done." (Citation and punctuation omitted.) *Molly Pitcher* at 11.

We agree with Market Place that BBA's evidence did not provide a basis for ascertaining lost profit damages with reasonable certainty. The only lost profit evidence submitted by BBA was that testified to by its expert, who readily acknowledged that BBA had neither an established business nor a history of profitability. Although the expert testified that he reviewed industry standards with regard to profitability of businesses similar to that operated by BBA, his calculations were nevertheless based on estimates and expectations of profit held by BBA's owners. He admitted that start-up businesses similar to BBA had a high failure rate, and that he used BBA's expected profits and projected them into the *indefinite* future in arriving at his valuation. He agreed that his calculations were based on expectations and assumptions and that he was required to make

these assumptions because the new business did not provide him with a sufficient "database." Clearly, BBA's evidence of lost profits was based entirely on speculation and conjecture. "Loss of anticipated profits which is completely conjectural is not recoverable. [Cits.]" *The Hip Pocket v. Levi Strauss & Co.*, 144 Ga. App. 792, 794 (2) (242 SE2d 305) (1978). Like the business at issue in *Molly Pitcher*, supra, BBA's business was, at the time of Market Place's breach, "in its incipiency, by definition a newly-begun enterprise. In the circumstances presented here, there plainly exists no basis upon which a reasonably accurate computation of lost profits might be made." Id. at 11.

The trial court's award in excess of $50,000 was based, at least in part, on BBA's evidence of lost profits, as it represented an amount far greater than the competent valuation evidence presented by Market Place's expert. Because we have concluded that BBA's lost profit evidence does not provide a sufficient basis on which to award damages, we remand for the trial court to consider the competent evidence of record and to award damages in accordance with that evidence.

*Judgment reversed. Andrews, C. J., Birdsong, P. J., McMurray, P. J., Ruffin and Eldridge, JJ., concur. Beasley, J., dissents.*

BEASLEY, Judge, dissenting.

I respectfully dissent because the trial court's judgment must be affirmed. This case was tried once before, and in the course of the trial now on appeal, the court made clear that it would base its decision on the evidence produced at the first trial as well as that produced in the second. The court stated: "I intend to use the records as I've tried this case once before. It's not like a jury trial where they've never heard the evidence; I've heard this evidence once before. . . . I do not intend to retry this entire case."

We do not have before us the record in the first trial, and thus we cannot judge whether the evidence, taken all together, supported the court's judgment of $52,754.33. It is appellant's responsibility to assure that the record necessary for consideration of the enumerations of error is presented. *Bennett v. Executive Benefits,* 210 Ga. App. 429 (436 SE2d 544) (1993). In the absence of a full record, we must assume that the trial court ruled correctly, not the opposite. Id.; *Wright v. State,* 215 Ga. App. 569, 570 (2) (452 SE2d 118) (1994) (absent transcript of evidence, " 'this court must assume as a matter of law that the evidence at trial supported the court's findings' " (citations omitted)). "Absent a showing to the contrary, the proceedings in the trial court are presumed to have been conducted in a regular and legal manner. [Cit.]" *Cox v. City of Lawrenceville,* 168 Ga. App. 119, 120 (1) (308 SE2d 224) (1983). Second, appellant did not seek find-

ings of fact from the trial court, as it could have done under OCGA § 9-11-52 (a). See *Poor v. Leader Fed. Bank for Savings*, 221 Ga. App. 889 (473 SE2d 563) (1996) (findings required only upon request of a party). Not having requested such prior to the court's ruling, appellant had a second opportunity after the ruling to perfect the record in this regard, provided by subsection (c), but chose not to do so. These findings are necessary to show the basis upon which the award was calculated, as this figures into the enumerations of error raised. Their absence precludes a determination of the rightness or wrongness of the court's judgment. *Nat. Chemco v. Union Camp Corp.*, 209 Ga. App. 317, 318 (433 SE2d 691) (1993) (party's failure to request findings precludes review of bench trial decision).

The findings of a trial court in a bench trial will not be disturbed on appeal if there is any evidence to support them. *McMillan v. Motor Warehouse*, 221 Ga. App. 550, 551 (472 SE2d 120) (1996). The problem here is that we do not have findings and we do not have all the evidence. We do know, however, that the court applied the measure of damages which this Court instructed it to use in *Market Place Shopping Center v. Basic Business Alternatives*, 213 Ga. App. 722, 723 (445 SE2d 824) (1994).[1]

A point should be made about appellant's evidence. Its expert merely gave his opinion about the value of the leasehold with and without the non-competition agreement. That is not what was at issue. The tenant had already taken possession, made many improvements, started up a business, and a few months later faced the landlord's breach of the lease which resulted in the demise of the tenant's business. The tenant was not the willing holder of a lease without the non-competition provision, and the landlord could not blithely say, "let's pretend you leased these premises without the provision, and I'll pay the difference." The tenant went to great trouble and expense in reliance on the promise that, for five years, no other deli would be leased space in the shopping center. Its damages were to be measured from the date of breach, and the leasehold's condition and term then, not from the date the lease was made.

It is noted that the majority opinion states in the last sentence of the second paragraph of Division 2: "The speculative nature of lost profits is therefore not necessarily a bar to their indirect recovery." That is not correct; whether lost profits may be figured into the

---

[1] The difference in the value of the leasehold broken and unbroken would, it seems to me, bring into play what a subtenant would be willing to pay a willing but unforced tenant for the leasehold, with and without the competition from Gorin's, at the time of the breach. Gorin's opened in March 1992, after the leasehold had been improved and outfitted to operate as a deli and bakery. At that point, what would a willing subtenant pay for the leasehold of approximately four and one-half years, in its then improved and operating condition, with and without the presence of Gorin's?

difference in value of the lease broken and unbroken does not depend on whether they are speculative or not. If speculative, they may not be used to impact the value. There was some evidence that the anticipated profit figure given by the expert was not speculative and that the deli was then operating profitably. It was precisely the landlord's early breach which prevented the tenant's business from having a longer track record from which to project anticipated loss of profit.

DECIDED JULY 16, 1997.

*Cohen, Pollock, Merlin, Axelrod & Tanenbaum, James J. Brissette*, for appellant.
*Sylvia K. Morrow*, for appellee.