A00A1732. SCHREIBER COMPANY-SHURLINGTON PLAZA, (LP) v. NORSTAN APPAREL SHOPS OF N.Y., INC. et al.
(541 SE2d 676)

POPE, Presiding Judge.

In March 1995, Norstan Apparel Shops of N.Y., Inc.[1] signed a lease to open a "Fashion Cents" store in the Shurlington Plaza in Macon, Georgia. Fashion Cents stores sell modestly priced ladies' apparel throughout the country. The Shurlington Plaza lease, a standard form used by Norstan, contained a noncompetition provision prohibiting Norstan's landlord from renting to other businesses selling comparable merchandise:

---

[1] Norstan Apparel Shops, Inc., a separate corporate entity, was also named as a defendant in this action. Norstan Apparel Shops, Inc. guaranteed the obligations of Norstan Apparel Shops of N.Y., Inc. under the Shurlington Plaza lease. For ease of reference, we will refer to both Norstan entities collectively as "Norstan."

> [D]uring the term of this Lease, and any renewal thereof, the Landlord, its successors, assigns, heirs and executors, hereby covenants that its successors, assigns, heirs, and executors shall not Lease, use, permit to be used, on leased [sic] on the Shopping Center premises any business operations primarily engaged in the sale of ladies popular priced apparel defined as a store where 50% or more of the merchandise is priced under $30.00.

Schreiber Company-Shurlington Plaza, (LP), a Pennsylvania limited partnership, purchased Shurlington Plaza in November 1995. Schreiber determined that Norstan's form noncompetition language did not apply to the Shurlington Plaza lease because it was prefaced by language referencing negotiations for Norstan's payment of a percentage rent, and the Shurlington Plaza lease provided that Norstan would pay only a minimum annual rent, with no percentage component. Accordingly, in September 1997, Schreiber signed a lease with CATO Corporation, which opened an "It's Fashion" store in Shurlington Plaza the following month. The It's Fashion stores sell predominantly budget-priced women's apparel, as well as men's and children's clothing.

Within one week of the It's Fashion store opening, Norstan wrote Schreiber stating that the CATO lease was in violation of the Norstan lease's noncompetition clause. The letter also informed Schreiber that Norstan was exercising one of the remedies provided in the lease for such a violation and thus would begin paying one-half of the stated monthly rent as of November 1, 1997. After further communication, the parties were unable to resolve their differences, and Schreiber filed a declaratory judgment action seeking a determination of whether the noncompetition provision applied and whether the CATO lease violated the clause. Schreiber also sought to recover damages if Norstan was found to have breached the parties' lease by paying one-half rent. Norstan filed a counterclaim seeking damages for Schreiber's breach of the noncompetition provision. Norstan subsequently conceded liability to Schreiber for the amount of unpaid rent, and the matter proceeded to a jury trial on Norstan's counterclaim. After Schreiber twice moved unsuccessfully for a directed verdict, the jury returned a verdict in Norstan's favor in the amount of $146,000 in compensatory damages and $32,000 in litigation expenses.

Schreiber's sole argument on appeal is that the evidence failed to support the jury's damage award because Norstan presented evidence of lost profits only and did not provide evidence showing any decrease in the value of its leasehold. In support of this argument, Schreiber notes that the jury's compensatory damage award of

$146,000 corresponds almost exactly to Norstan's evidence of the lost profits at the Shurlington Plaza store.

Both parties agree that the appropriate measure of damages for the breach of the noncompetition provision in the parties' lease is the diminution in value of the leasehold following the breach:

> The measure of damages recoverable for a lessor's breach of a covenant not to rent other stipulated premises for a competing business is the difference in value between the plaintiffs' leasehold with the covenant against competition unbroken and the same leasehold with the covenant broken.

(Citation and punctuation omitted.) *Market Place Shopping Center v. Basic Business Alternatives*, 227 Ga. App. 419, 420 (1) (489 SE2d 162) (1997). And while the value of the leasehold is not defined by the amount of rent paid or Norstan's lost profits, such evidence is relevant to show damages flowing from the breach:

> The value of said leasehold is not controlled by the stipulated rental therefor, nor the profits which the tenant could have realized from the operation of his business without the adjacent competing business. However, allegations and evidence of loss of profits are material to show the damage sustained by the lessee, in accordance with the rule herein stated.

(Citation and punctuation omitted.) Id. Thus, "while lost profits is evidence which may be presented in support of a claim for diminution of the value of the leasehold, and may be an element of damages, it is not the direct measure of damages in such a claim." *David Enterprises v. Kingston Atlanta Partners*, 211 Ga. App. 108, 111 (2) (438 SE2d 90) (1993).

At trial, the president of Norstan Apparel Shops testified, based upon a comparison with the sales performance of other Fashion Cents stores in Georgia, that the Shurlington Plaza store had lost profits of $146,687. Schreiber does not contest Norstan's method of calculating its lost profits or contend that the lost profits figure is speculative. Compare *Market Place*, 227 Ga. App. at 422-423 (2). Rather, it contends that this evidence was insufficient because Norstan made no effort to relate this figure to the diminution in the leasehold value.

But this evidence was not the only evidence of damages presented to the jury. Schreiber's own expert testified regarding the leasehold value. The expert initially testified that Norstan's leasehold had experienced no diminution in value and, in fact, had been enhanced in value after the It's Fashion store moved into Shurlington

Plaza. But on cross-examination, the expert admitted that as late as a week prior to trial his calculations had shown that the leasehold had diminished in value by $24,034. "Consequently, proof of lost leasehold value other than . . . lost profits was submitted, albeit from [Schreiber's] own expert." *Market Place*, 227 Ga. App. at 421 (1). And the jury "was authorized, as trier of fact, to believe portions of his testimony and disbelieve others. [Cit.]" Id. at 420-421.

In addition, the jury heard evidence relating to the lease Schreiber executed with CATO Corporation. That lease also contained a noncompetition provision, although it necessarily allowed for the presence of the pre-existing Fashion Cents store. The CATO lease provided a fixed remedy in the event Schreiber breached that provision: CATO's rent would be reduced by $22,000 per year and CATO would cease to pay an additional $3,560 in other charges under the lease, for a total of $25,560 per year. Thus, the jury could have concluded that Schreiber had agreed that this was a reasonable value for the breach of the CATO noncompetition provision. And it was authorized to compare this value to Norstan's noncompetition provision, which allowed for *no* competing stores in Shurlington Plaza.

Therefore, we conclude that the jury had sufficient evidence upon which to base its verdict. And while the verdict was comparable to Norstan's lost profits figure, the jury was entitled to consider lost profits in calculating the diminution in leasehold value:

> Evidence of loss of profits is admissible and pleadings in support thereof proper in order that the jury may properly estimate the value of the leasehold estate before and after the covenant is broken. Therefore, a recovery for loss of profits occasioned by a breach of contract where properly pleaded and proved may be indirectly had.

(Citations and punctuation omitted.) *David Enterprises*, 211 Ga. App. at 111 (2).

*Judgment affirmed. Miller and Mikell, JJ., concur.*

DECIDED NOVEMBER 6, 2000 —
RECONSIDERATION DENIED DECEMBER 6, 2000 — ▊

*McGee & Oxford, James J. Brissette*, for appellant.
*Jones, Cork & Miller, W. Kerry Howell, Hall, Bloch, Garland & Meyer, J. Ellsworth Hall III*, for appellees.